Whelen v. Osgoodby.

---

HENRY WHELEN, JR., et al., executors, &c., of Henry Whelen, deceased,

*v.*

GEORGE M. OSGOODBY et ux.

[Filed December 17th, 1901.]

1. In a suit to reform, on the ground of mistake, a mortgage conditioned upon the mortgagor making certain payments to the mortgagee and "successors," it appeared that the attorney who drew the instrument used the word "successors" in the sense of "heirs," and that the parties intended to convey a fee, instead of merely a life estate.—*Held,* that the evidence authorized a reformation by substituting the word "heirs" for "successors."

2. An instrument will not be reformed for mistake in the absence of fraud, unless the mistake was mutual.

3. Fraud or mistake, to sustain a reformation of an instrument, must be proved beyond a rational doubt.

4. In a suit to reform a mortgage conditioned upon the mortgagor paying a debt in five years, with interest from date at "5 per cent., five years from date, which will be on May 1st, 1905," on the ground of mistake, so as to provide for the payment of interest annually, instead of at the end of the five years, as claimed by mortgagor, the attorney who drew the instrument testified that the interest was to be paid at the end of five years, while an agent of the mortgagee testified that the interest was to be paid annually.—*Held,* that the testimony, measured by common experience and business usage, established an agreement which required the annual payment of interest.

*Mr. John V. Joline* and *Mr. David J. Pancoast,* for the complainants.

*Mr. Martin V. Bergen,* for the defendants.

REED, V. C.

The bill states that the complainants, the executors of Henry Whelen, deceased, in August, 1899, agreed to sell a piece of land at Montclair, Essex county, New Jersey, to George M. Osgoodby for $3,700—$3,200 of the price to be secured by a mortgage, payable in five years, with interest at five per cent., payable annually or semi-annually; that this agreement was reduced to writing on August 23d, 1899, but, by a mutual mistake, it did not clearly state that interest was to be so paid; that on April 28th, 1900, a deed was delivered to the wife of defendant, who, with her husband, made a mortgage upon the said property to secure the sum of $3,200, which mortgage, by mutual mistake, contained the same omission in respect to the time of the payment of the five per cent. interest; that said mistake was not observed until after the execution and delivery of the deed and mortgage; that defendants refused to correct said mistake.

It is also stated that, by mutual mistake, the word "successors" was employed in the mortgage instead of the word "heirs," by which mistake a life estate was mortgaged to the executors, and that the defendants have refused to correct this.

The answer states that the agreement was that the interest

should be payable at the end of five years, and that the written agreement and the mortgage correctly, fully and properly expressed the intention of the parties. It also denies that there was any mistake in using the word "successors" instead of the word "heirs." The defendants, by way of cross-bill, ask that the deed made to Osgoodby may be reformed by inserting in it a warranty of title, in accordance with the agreement for the sale of said property.

It appears that the agreement for the sale of this property was made for the complainant by Robert C. Ryerson, a real estate agent at Montclair. So far as appears there was no meeting between the executors of Whelen and Osgoodby, in which the terms of the sale were discussed. The agreement for the sale was drawn by Mr. Ryerson on August 23d, 1899. This agreement provides that the executors shall furnish abstracts of title; that the consideration to be paid is $3,700, to be paid as follows: $500 or more on or before May 1st, 1900, at which time a proper deed of conveyance was to be delivered by the party of the first part and a properly executed bond and mortgage, bearing interest at the rate of five per cent., for the balance—if any part of the purchase-money remained unpaid—to be delivered by the party of the second part to the said party of the first part; the said bond and mortgage to run for five years, with the privilege to the party of the second part to pay $500 or any larger sum whenever he desired to do so.

The bond and mortgage for $3,300 was executed on April 28th, 1900. The condition of the instrument is in the following words:

"Mary E. T. Osgoodby shall pay to Whelen and others, executors, &c., their successors, $3,200, with interest to be computed from May 1, 1900, at the rate of five-per cent. five years from date which will be on May 1, 1905, with the privilege to said Mary E. T. Osgoodby to pay $500 or any larger sum to apply thereon whenever she desires to do so."

The bill was filed March 21st, 1901. The delay in filing the bill is thus explained: The bond was sent to the executors, who put it away, without their attention being drawn to the interest clause. Afterwards, when the time came for a semi-annually

payment of the interest, as the interest was not paid, the executors put the matter into the hands of their Philadelphia solicitor, who found that the contract did not express when the interest was to be paid, and the executors at once asked for the payment of the interest. The solicitor of the executors, in Philadelphia, having only the bond, desired to see the mortgage, and he was informed that it had not been received by the executors from the record. He at once wrote to Mr. Ryerson to obtain the mortgage from the record, and it was sent to him. He, for the first time, noticed that the word "successors" was used in the mortgage instead of the word "heirs," and then consulted with Mr. Joline, of the New Jersey bar, concerning the effect of the word "successors;" and Mr. Joline, in examining the mortgage, discovered that the condition in it did not call for annual or semi-annual payments of interest. Soon thereafter, upon the refusal of the mortgagor to rectify the alleged mistake or pay the interest, this bill was filed.

In respect to the word "successors" it is clear that its insertion was the result of a mutual mistake, both parties intending that the mortgage should be upon the fee of the mortgaged property. Mr. Osgoodby, who drew the mortgage, is a New York lawyer, and says that this word, according to the law of that state, is sufficient to pass a fee, and he, in effect, admits that the word was used in this mortgage with the understanding that it had that force. The mortgage in this respect should be reformed.

The perplexing question is in regard to the interest clause in the condition of the mortgage. The language of the condition in the mortgage imports an obligation to pay interest at the time of the payment of the principal, namely, May 1st, 1905, at the end of the five years. *Cooper's Administrator* v. *Wright, 3 Zab. 200.* There is no doubt at all that the mortgagees and their agent, Mr. Ryerson, had no intention whatever to take a mortgage with such a condition. Mr. Ryerson swears he had no such intention, and that none such was expressed in his negotiations with Mr. Osgoodby. But while a unilateral mistake may be a ground for the rescission of a contract, upon the theory that the minds of the parties never met and so no contract arose, it is not a ground for reformation in the absence of fraud. *Green* v. *Stone, 9 Dick.*

*Ch. Rep. 387, 396.* Unless, therefore, Mr. Osgoodby participated in the mistake, there could be no reformation, unless, in drawing the mortgage, he was guilty of a fraud upon the complainants. If Mr. Osgoodby, who drew this mortgage, wrote the condition, not by mistake, but knowing that it was not as the mortgagees intended, he was guilty of a fraud, which would justify a rescission or reformation of the mortgage. The circumstances would bring the case within the principle laid down by Mr. Pomeroy, that equity will afford the affirmative relief of reformation when, through fraud of the other party, the instrument fails to express the real relation that existed between the parties. *2 Pom. Eq. Jur.* § *872.* In *Wiswall* v. *Hall, 3 Paige 313,* where a vendor, knowing that the vendee understood that he was getting a lot, secretly had included in the deed only a part of the lot, for which the vendee paid the consideration agreed upon for the whole lot, he was compelled to make a deed for the rest of the lot; and this was practically a reformation, although in the shape of a decree for specific performance. To justify a reformation upon either of these grounds the proof must be entirely clear; either mistake or fraud must be proved, not only by the weight of evidence, but beyond a rational doubt. *Green* v. *Stone, supra.*

As to the matter of mistake, Mr. Osgoodby swears that there was an agreement that the interest was to be paid at the end of five years. In this he directly contradicts Mr. Ryerson. There being nothing to impeach the character of either Mr. Ryerson or Mr. Osgoodby, it follows that, if there was nothing in the character of the transaction itself to support the statement of either of these parties, the complainants' case must fail.

But while the testimony of an unimpeached witness is not to be arbitrarily disregarded, it must be measured by the standard of common experience and business usage.

The statement that a man, under certain circumstances, did something which we know from experience not one in a thousand would do, under the same circumstances, is discredited by the inherent improbability of the statement. It is more rational to believe that the testimony is intentionally or mistakenly untrue, than it is to believe that the marvelous occurred. Now,

the experience of men who have had occasion to take mortgage securities to run for more than one year for the payment of money is that interest is payable annually or semi-annually. Mr. Jones, in his work on *Mortgages* (at *p. 73*), remarks: "Interest is usually payable annually or semi-annually from the date of the mortgage." Vice-Chancellor Dodd observes, in *Ackens* v. *Winston, 7 C. E. Gr. 444, 447:* "The prevailing usage as to mortgage debts is to pay interest as often, at least, as once a year." Now, when a party asserts that it was agreed that interest upon a mortgage debt to run for five years should not be paid until the end of the whole term, his assertion is so contrary to usage and common experience that it should be fortified by convincing evidence before it becomes credible. That such an express agreement was made in this case is, as already remarked, denied by Mr. Ryerson. It is also improbable from the fact that it nowhere appears in the agreement for the sale of the mortgaged premises when the interest shall be paid. If such an exceptional arrangement had been entered into, it is, in the highest degree, improbable that the mortgagor would not have insisted that it should be put into the written agreement in express terms. In fact, the agreement says nothing concerning the time when the interest is to be paid. It says that on May 1st, 1900, $500 is to be paid and the deed is to be delivered and a mortgage, bearing interest at five per cent., for the balance is also to be delivered. Then the agreement provides, in a separate sentence, that the mortgage is to run for five years. I am clear therefore that there was no express contract entered into between Mr. Osgoodby and Mr. Ryerson that the interest upon the mortgage should not be paid until the end of five years.

But it is equally clear that nothing at all was said about the time when the interest should be paid. The written agreement embodies all that was said, which was substantially this: That the mortgage should be given, bearing five per cent. interest, and that the mortgage should run for five years. The question is whether, by this language, the meaning is that the interest upon the mortgage shall be payable annually or at the end of the term. People speak of six per cent. and five per cent. mortgages. When mortgages run for a term longer than a year the implication is, from

Whelen *v.* Osgoodby.

usage, that interest shall be, at least, annually. A mortgage differs from a promissory note, which is rarely drawn for a longer period than a year. If a court of equity was called upon to decree a specific performance of this agreement, to make this mortgage, it seems to me, in the light of general usage, it would decree execution of a mortgage with interest payable, at least, annually. Such would be the legal construction of the agreement, and such was the intention of the parties at the time the agreement was signed.

Now, if this be so, then the condition, as placed in the mortgage of Mr. Osgoodby, was varied from the terms of the agreement. If the language he used was used by mistake, it should be reformed; if it was used purposely, knowing it to be contrary to the intention of the other side, trusting that it would be overlooked until after the transaction was consummated, it was a fraud on his part, for which the mortgage should be reformed.

In my judgment, the probabilities lie in the direction that Mr. Osgoodby did not appreciate the force of the language he used in the condition, and that afterwards, when he ascertained that, by its legal construction, he was not bound to pay interest until the end of the five years, he refused to pay interest annually, and resolved to stand upon the strict letter of the condition.

If the transaction was fresh and no improvements had been put upon the property, and the parties could be placed in their former state, I would be inclined toward a rescission of the whole matter.

As matters stand I will advise a decree that the mortgage shall be reformed by substituting the word "heirs" for "successors" and by inserting in the condition the provision that the interest shall be paid annually.

The prayer of the cross-bill is denied.