**C. A. THARP v. BRUCE KITCHELL; C. A. THARP v. BERT F. HISCOCK and B. A. MAXFIELD, as Executors of the Last Will and Testament of William A. Weihe, deceased.**

9 So. (2nd) 457                                    Division B

July 28, 1942

Paul W. Potter, for appellant.

Bert Winters and W. J. Lake, for Appellee Bruce Kitchell, and W. Terry Gibson and Herbert T. Gibson, for Appellees Bert F. Hiscock and B. A. Maxfield, as Executors of the Last Will and Testament of William A. Weihe, deceased, appellees.

CHAPMAN, J.:

The appellant, C. A. Tharp, filed separate suits on two separate promissory notes against Bruce Kitchell and representatives of the estate of William A. Weihe in the Circuit Court of Palm Beach County, Florida. The declarations were in the usual form and the defenses being the same, the suits were consolidated and tried, when separate verdicts and judgments were entered. The trial resulted in judgments for defendants below and appeals have been perfected to this Court. The cases are consolidated here and can be disposed of in a single opinion. It is represented that other cases are pending below controllable by the opinion and judgments rendered in the cases at bar. Counsel for the respective parties disagree on the questions presented for adjudication by this Court.

The appellant, below and here, challenged the legal sufficiency of the two pleas of the defendants viz:

"That the note sued upon herein is an accommodation note, in that the same was executed without

consideration and for the sole benefit of Asher-Tharp, Inc., for that during the year A.D. 1926, Asher-Tharp, Inc., a Florida corporation, was engaged in the business of selling gas and oil in the City of West Palm Beach, Florida; that during this time the Palm Beach Yacht Club, a non-profit corporation, organized under the laws of the State of Florida, was also operating in the City of West Palm Beach, Florida; that during said time the Palm Beach Yacht Club was indebted in some sum of money for gas and oil which it had purchased from Asher-Tharp, Inc.; that the said Asher-Tharp, Inc., by and through its agent or agents, represented unto the Palm Beach Yacht Club and, to this defendant, that it was financially embarrassed and needed the note of the defendant sued upon and notes of other members of the Yacht Club in order to bolster the credit of Asher-Tharp, Inc., during the summer months of the year 1926; that at said time this defendant was not indebted to Asher-Tharp, Inc., nor the Palm Beach Yacht Club, in any sum whatsoever, nor under any obligation to either of said parties, but at the request of said Asher-Tharp, Inc., this defendant executed the note sued upon and made the same payable to the Palm Beach Yacht Club, and it was understood and agreed at said time by and between the said Asher-Tharp, Inc., Palm Beach Yacht Club, and this defendant that the said note would be used solely for the purpose of bolstering the credit of the said Asher-Tharp, Inc., and would not be used for any other purpose or purposes, and that said note, whether used for such purpose or not, would be returned to this defendant at the maturity date of said note; that, relying upon the representations aforesaid, this defendant, without any consideration

whatsoever moving to him, and for the sole benefit of Asher-Tharp, Inc., signed the note.sued upon.

"Defendant would further show unto the Court that the plaintiff herein if as alleged acquired the note, acquired the same after maturity and is not, therefore, the bona fide holder for value before maturity of said note."

"That the note sued upon was never delivered for that during the year A.D. 1926 Asher-Tharp, Inc., a corporation created under the Laws of the State of Florida, was engaged in the business of selling gas and oils in the City of West Palm Beach, Florida; that during this time the Palm Beach Yacht Club, a non-profit corporation organized under the Laws of the State of Florida, was also operating in the City of West Palm Beach, Florida; that Asher-Tharp, Inc., during the early months of the year 1926 aforesaid, presented a bill to the Palm Beach Yacht Club, a corporation aforesaid, for certain gas and oils which it has purportedly furnished Palm Beach Yacht Club aforesaid; that the bill was immediately disputed by the Palm Beach Yacht Club, a corporation aforesaid; that Bruce Kitchell, being at that time a member of the Palm Beach Yacht Club, was appointed on a committee to settle the disputed claim aforesaid; that negotiations were had between Asher-Tharp, Inc., and the committee aforesaid toward the settlement of the claim and at this time it was represented by Asher-Tharp, Inc., to Bruce Kitchell and the members of the committee aforesaid that Asher-Tharp, Inc. was financially embarrassed; thereupon request was made upon Bruce Kitchell to execute a note, without consideration, for the sole benefit of Asher-Tharp Inc., said note to be made payable to the Palm Beach Yacht

Club and by it indorsed in blank, to be used by
Asher-Tharp, Inc. to bolster its credit during the
summer months of the year 1926, and to be returned
to Bruce Kitchell at its maturity; thereupon it was
represented to Bruce Kitchell aforesaid that if he
would sign such a note that such note would never
be used for any other purpose and would never have
any validity whatsoever unless and until, (a) similar
notes were executed in like manner by other members
of the Palm Beach Yacht Club of a total sum of
$14,000.00; and (b) that said note would be used only
for the purpose of establishing a line of credit for
Asher-Tharp Inc. at some bank or banking company
until the fall of the year 1926; and (c) that said note
would be returned to Bruce Kitchell, its maker, at its
maturity; that under the specific agreements and
representations aforesaid by Asher-Tharp Inc. to
Bruce Kitchell, he, the aforesaid Bruce Kitchell,
signed the note sued upon in this action and dated
the same at a further time, to-wit, August 2, 1926;
that the notes to be executed by other members of
the Palm Beach Yacht Club in a like manner totalling
the sum of $14,000.00, were never secured; that the
plaintiff herein is not a holder in due course of said
note, and therefore the defendants alleged that there
has never been a delivery of the note sued upon
herein."

The aforesaid pleas were attacked on grounds (a)
the pleas show that the note was negotiated before
maturity for a valuable consideration; (b) the alle-
gations are insufficient to show the plaintiff was other
than a holder in due course; (c) the facts alleged are
insufficient to show the title of the Yacht Club was de-
fective; (d) the defendant engaged that he would pay

the note according to its tenor; (e) that the defendant was an accommodation maker according to the facts as alleged; (f) a collateral agreement between the defendant and the oil company could not be adduced and shown so as to defeat a recovery on the note; (g) parol evidence was not admissible to vary the terms of the written note sued upon. The trial court overruled the demurrer to the aforesaid pleas and the issues were submitted to a jury.

It is here contended that the trial court should have sustained the demurrer to the aforesaid pleas, and cites to sustain his contention Florida East Coast R. Co. v. Peters, 72 Fla. 311, 73 So. 151, Ann. Cas. 1918D 121; Forbes v. Ft. Lauderdale Mercantile Co., 83 Fla. 66, 90 So. 821; Reese v. Schench, 107 Fla. 166, 144 So. 313; Sections 6789 and 6822 C.G.L.; Anderson v. Ax, 104 Fla. 294, 139 So. 798; Fannin v. Fritter, 127 Fla. 97, 172 So. 691; Erwin v. Crandall, 219 Fla. 43, 175 So. 862; Weirs v. White, 142 Fla. 628, 196 So. 206; Knabb v. Reconstruction Finance Corp., 144 Fla. 110, 197 So. 707, and text writers and cases from other jurisdictions.

The case of McCranie v. Cason, 79 Fla. 857, 85 So. 160, involved a plea of want or failure of consideration of a promissory note. The plea set up that the defendants purchased a tract of land from the plaintiff; that a mortgage then existed upon the land so purchased and it was represented by the plaintiff that the mortgage could be retired or discharged for the sum of $2,000.00; the defendants then gave the plaintiff the note for the $2,000.00, being the note sued upon, for the purpose of discharging the mortgage then existing upon the land; the plaintiff signed a written agreement simultaneously with the execution

and delivery of the note sued upon in which he agreed to pay and obtain a cancellation of the mortgage; that the note was given for the specific purpose of discharging said mortgage on or before the 1st day of December, 1912; and the defendants alleged that the mortgage was not discharged, cancelled and satisfied of record by the plaintiff according to his written agreement and for said reason the note sued upon was without consideration. This Court held the plea was a good defense in the suit on the promissory note.

The case of Klemtner v. Peters, 90 Fla. 448, 106 So. 401, involved the legal sufficiency of a plea averring total failure of consideration of a promissory note. Suit was brought on a promissory note against the maker and the plea of failure of consideration alleged in part that the plaintiffs were agents of Nathan Neufel for the rental of described property; that plaintiffs induced the defendant to lease the property for a period of ten years at an agreed annual rental and Neufel agreed to expend a large sum of money to improve the property and purchase fixtures appropriate for defendant's business; that Neufel would not pay his agents, the plaintiffs, a full commission when the defendant agreed to pay the agents commission in the sum of $750.00, provided the agents would get the lease from their principal, Neufel, and put the defendant in possession of the property for the ten year period, and pursuant to the agreement the defendant executed and delivered the note sued upon. Neufel refused to sign the lease or to place the defendant in possession of the property and returned a deposit of $5,000.00 to the defendant without possession of the building and the leased premises, and all of which plaintiffs had full knowledge as agents of Neufel, and

for said reason the note sued upon was without consideration. This Court sustained the aforesaid plea and in part said (text 90 Fla. 451):

"This plea is sufficient to admit supporting evidence of a failure of consideration under the rule that where a promise to perform a service is the consideration for a note, a plea averring that the service had not been performed, though the agreed time for performance had elapsed, is a good plea of failure of consideration. McCranie v. Cason, 79 Fla. 857, 85 South. Rep. 160; Odlin v. Stuckey, 76 Fla. 42, 80 South. Rep. 291; Jones v. McCallum, 21 Fla. 392; Hoyle v. Shirley, 94 Miss. 466, 49 South. Rep. 177; Perkins v. Brown, 115 Mich. 41, 72 N.W. 1095; Hawks v. Truesdell, 12 Allen (Mass.) 564."

Parol evidence is admissible, as between the parties, to show that a negotiable note was not to become binding, except upon the happening of a certain event in the future. Such evidence does not vary the terms of a written instrument but tends to establish the fact that the note as between the parties never became a fixed and binding obligation because the event in the future contemplated by the parties failed to happen or occur. See Cockrell v. Taylor, 122 Fla. 798, 165 So. 887, 105 A.L.R. 1338. We hold that the demurrer to the pleas, supra, in the order entered by the trial court was properly overruled.

Bruce Kitchell testified that he was a member of the Palm Beach Yacht Club and that the yacht club owed Asher-Tharp, Inc., a large sum of money for gas and oil. Asher, an officer of the corporation, handled in its behalf the details of the execution of the note in litigation with Kitchell. It is Kitchell's testimony that established the facts alleged in the pleadings

*supra.* Counsel for appellant contends that this testimony is inadmissible under the several provisions of Section 4372 C.G.L., and the theory of corporate fiction should be disregarded when a construction of the statute is being considered. We have thus presented for adjudication the question of the admissibility into evidence for the consideration of the jury the details of a conversation concerning the note in litigation had between a now deceased officer of the corporation and the maker of a note who is a party defendant. The inhibitions of Section 4372, *supra,* are restricted to transactions and conversations between the deceased and (a) executor or administrator; (b) heir at law; (c) next of kin; (d) assignee; (e) legatee; (f) devisee; (g) or survivor of such deceased persons. It is to be observed that the Legislature failed or omitted to extend these inhibitions to transactions and conversations with deceased officers of corporations. We are not authorized to supply by judicial interpretation the important omissions of the Legislature as contended for by counsel. The rules of statutory construction will not permit. See Madison v. Robinson, 95 Fla. 321, 116 So. 31.

In addition to what has been said above, it appears that these various notes in the sum of $500.00 each were executed by appellee and other members of the Yacht Club and endorsed by the Yacht Club and turned over to Asher-Tharp, Inc., as accommodation paper; that Asher-Tharp, Inc., borrowed money from the bank on its own note and used these various $500.00 notes, aggregating $12,000.00, as collateral to secure its note to the bank, which note said corporation subsequently paid to the bank, and the bank returned the various $500.00 notes to the Asher-Tharp

corporation. This resulted in discharging the signers of these accommodations notes. They had fulfilled their purpose, and when they were returned by the bank to Asher-Tharp, Inc., the latter was not a holder in due course. The Negotiable Instruments Act, Section 6872 C.G.L., provides that "A negotiable instrument is discharged: (2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation. (5) When the principal debtor becomes the holder of the instruments at or near maturity, in his own right."

Counsel for appellant contends that the evidence is insufficient to establish the allegations of the pleas. Several cases are cited in this connection. We have read the testimony appearing in the record and comment of counsel thereon appearing in the briefs and have heard an oral discussion by counsel at the bar of this Court. Litigants have a constitutional right to have their controversies decided by a jury under appropriate legal instructions. The right to a jury trial is immemorial, it was brought from England by the Colonists, and is generally recognized by Americans as a birthright of free men. It is guaranteed by the Federal Constitution and the Constitutions of the several States. It is a bulwark of protection for the common man in the democratic form of government. The Magna Charta provided that "no freeman shall be hurt, in either his person or property, unless by lawful judgment of his peers or his equals or the law of the land." This salutary principle of law in other countries has been supplanted by brutal force, hate, ambition and cruelty, and truly eternal vigilance is the price of liberty under all systems of government. The issues were properly submitted to the

jury under appropriate instructions and we fail to find error in the record.

Affirmed.

BROWN, C. J., TERRELL and THOMAS, JJ., concur.