BARKDULL, Judge.
This is an appeal from a final judgment in the sum of $93,878.60 in favor of Max *277 Westerman, individually[1] and as trustee for Gala Showplace, Inc. against Shell’s City, Inc. The claim arose out of an alleged oral contract to purchase a liquor license and pay Gala Showplace, Inc. therefor two per cent of gross sales of a package store to be operated on the licensed premises for a period of five years.
On December 8, 1966, Max Westerman, individually and as trustee for Gala Showplace, Inc. [a dissolved Florida Corporation], filed a complaint against the defendant, Shell’s City, Inc. Count I alleged that on January 31, 1963, Gala Showplace, Inc. was the owner of a business known as Club Twenty-Three located at 2300 Collins Avenue, Miami Beach, as an incident to which it owned an alcoholic beverage license. That, on February 1, 1963, Gala entered into an oral agreement with George McKelvey on behalf of Shell’s whereby Shell’s promised to pay Gala for transfer of the liquor license two per cent of the gross sales of a package liquor store, to be operated by Shell’s on the aforedescribed premises for a period of five years, the first of such annual payments to be due on January 1, 1964. The complaint alleges that the transfer was made, but the defendant [Shell’s] had not performed its part of the contract.
Count II was framed in quantum- meruit and asserted that the business and liquor licenses were transferred to the defendant with the understanding that Gala would be paid the fair monetary value thereof.
Count III alleged an oral contract of employment, wherein Shell’s agreed that in consideration of Max Westerman granting his consent and approval, as controlling stockholder in Gala Showplace, Inc., to the agreement to be entered into between Gala and the defendant and executing the necessary papers to effect such a transfer, the defendant promised to employ the plaintiff, Max Westerman, for a period of one year as manager of the package liquor store at the usual salary paid to a manager of Shell’s City Stores.
Count IV was virtually the same, except that fraud was alleged.
Upon defendant’s motion, the court dismissed Count IV early in the proceedings. Count III was withdrawn at trial by the plaintiff. There remained the counts on the alleged oral percentage contract and quantum meruit.
The defendant filed an answer and raised a number of defenses, among which were that the alleged contract sued on was contrary to public policy, was contrary to the statute of frauds; that the plaintiff was not entitled to maintain the derivative action, and that he was guilty of laches.
Even though a jury trial was demanded by the plaintiff, the parties tried the cases non-jury as an accounting suit, which resulted in the final judgment in favor of the plaintiff. This appeal ensued. A number of points have been preserved for appellate review. I deem it necessary to only consider the one urging that there was no competent credible evidence to support the trial judge’s finding of liability.
The record reveals the following: Prior to February 7, 1962, Gala Showplace, Inc. operated a bar and night club known as Club 23, at 2300 Collins Avenue, Miami Beach. On this date, the State Beverage Director revoked Gala’s license with prejudice for maintaining a “B girl” operation upon its premises. Gala exhausted its legal remedies to no avail, and the order of revocation became final in September of 1962. [Gala Showplace, Inc., v. State Beverage Department, Fla.App.1962, 143 So.2d 578; see also further proceedings found in Keating v. State, Fla.App.1964, 167 So.2d 46, quashed in Keating v. State, Fla.1965, 173 So.2d 673.] Thereafter, on October 24, 1962, Gala’s landlord, Empire *278 Corp., petitioned the Beverage Director to reissue the license to Empire Corp., stating in part as follows in its petition:
* * * * * *
“3. That Gala Show Place, Inc., the last tenant to occupy the premises, and the last holder of a State and County Beverage License No. 23 433, has abandoned and deserted the premises on the date the District Court of Appeal upheld the Director’s Order of Revocation, and your petitioner, as president of Empire Corporation, is now in actual physical possession of said premises.”
% ‡ ‡ H*
This petition was supplemented on December 7, 1962, by a letter which reads, in part, as follows:
* * * * * *
“The intention of this letter is to serve as a supplement to the Petition for Modification heretofore filed in this cause by Louis DeKovnick, the landlord of the premises at 2300 Collins Avenue, Miami Beach, Florida. Due to a misunderstanding between Mr. DeKovnick, a real estate broker, and Shell’s Super Store, Inc., Mr. Dekovnick, as President of Empire Corporation, the landlord of the premises, entered into a lease agreement on behalf of his corporation with Shell’s Super Store, Inc., wherein said lease agreement provided for the furnishing of ¡a licensed premise by the landlord, said license to be solely for a package store.
“In reliance upon this Agreement, Shell’s Super Store, Inc. has already expended the sum of $30,000.00 in outside alterations, repairs, signs, plate glass, fixtures, etc., all of which were ordered and made especially for this location. This is in addition to the landlord having expended certain monies for inside wall alterations.
“It is my intention to now once again request that the Petition hertofore filed by (sic) granted. Please be advised that Gala Showplace, Inc., the licensee of record, has executed a transfer application, in response to a distress notice given to it, pursuant to Chapter 83 of the Florida Statutes, so that Gala Showplace, Inc. has thereby divested itself of any claim or right to this license, should the Petition be granted.” [emphasis added]
% 5^ * >jt
This letter was written in December, some two months prior to Westerman’s claimed oral contract with McKelvey.
Upon the landlord’s petition, the Beverage Director issued an amended order dated January 24, 1963, rescinding the “with prejudice against the location” portion of the order of February 7, 1962 and, on January 31, 1963, issued a second amendment rescinding the revocation of the license upon the condition that:
* H< sfc i{c
“ * * * said license must be sold to a bona fide purchaser and application for transfer of the license be made to said purchaser within thirty days from the date of this order. The licensee is hereby authorized to make a late renewal of the license at this time.”
* * * * * ^
The beverage license was immediately renewed through Empire’s attorney for Gala Showplace, Inc. The parties then filed an application[2] for transfer of alcoholic beverage license on February 5, 1963. This application contained the standard form “Affidavit of Seller” signed by Westerman, consenting to the transfer and stating that a sale in good faith of the business had been made to the applicant. Thereafter, the license was transferred and issued to Shell’s City, Inc.
*279 Westerman testified that on February 1, 1963, he entered into an oral agreement with George McKelvey, agent for defendant [Shell’s City, Inc.], whereby Gala Showplace sold and transferred its liquor license to Shell’s in consideration for two per cent of the gross sales of the package store for a period of five years and employment of Westerman as manager of the store for the balance of 1963 at a weekly salary of $125.00, plus approximately $25.-00 in commissions. There was no written memorandum of this agreement and there were not witnesses thereto.
Testimony at trial established that the revoked license in question had no value until the reinstatement on January 31, 1963. An expert witness testified that during this period the value of a valid unsuspended liquor license on Miami Beach was between $25,000.00 to $30,000.00.
George McKelvey, general manager of Shell’s [with whom Westerman alleges to have made the oral contract], died on January 14, 1964. E. H. Hill, who was Shell’s chairman, also died prior to Westerman’s filing of his complaint. Westerman testified that he never, at any time prior to the filing of the suit, made any demand upon Shell’s City [oral or written] to honor the alleged employment contract. He further testified that he never made any demand, oral or written, upon Shell’s City for an accounting at any time, though he claimed one was due on January 1, 1963. and each of the several years in question.[3] The court ordered the defendant to produce a record of its sales for the five-year period. In compliance, the defendant reported total sales of $4,094,073.00, and the judgment is predicated upon two per cent of those sales.
This suit was filed on December 8, 1966, after all of Shell’s participants in the acquisition of the 2300 Collins Avenue location [McKelvey and Hill] were deceased. It is also noted that although Westerman originally claimed to have made a contract with Shell’s for employment for one year [1963] as manager of the liquor store involved herein, no demand for such employment was ever made and Westerman was, in fact, not employed as manager. That Westerman did not make any demand for his alleged employment while Mc-Kelvey was still alive and no demand for percentage claimed to be due on January 1st of each of the years involved certainly makes his testimony suspect.
 The plaintiff had the burden of proof by a preponderance of the evidence, and more than a preponderance of the evidence is required to establish an oral contract, particularly if the party to be charged is deceased. In Alexander v. Bess, 123 Fla. 713, 167 So. 533, the Supreme Court, in affirming the chancellor’s dismissal of a suit based upon a claimed oral contract to lease lands, stated:
***** *
“We find that complainant failed to meet the degree of proof required by this court to enforce performance of an oral contract. This court has repeatedly held that such agreements must be supported by more than a mere preponderance of the evidence. The evidence should be clear, full, and free from suspicion.”
jfc >{í 2}C
See also Purvis v. Malloy, 129 Fla. 191, 176 So. 71; Miller v. Murray, Fla.1953, 68 So.2d 594.
In connection with the improbabilities attendant upon Westerman’s uncorroborated testimony is the fact that Westerman testified that he had his conversations with McKelvey and that he made the deal with McKelvey on or about February 1, 1963. The lease agreement between Empire and *280 Shell’s provided that the lessor would furnish the license and the lease between Empire and Shell’s, which is dated November 17, 1962, provides for the re-transfer of the liquor license to Empire upon expiration of the lease. Pursuant to the lease, Shell’s further agreed to pay a total rental of $180,000.00 and Shell’s was in the process of making substantial improvements of some $30,000.00 during November and December of 1962. This was some weeks prior to Westerman’s claimed conversation with McKelvey.
It is contrary to human behavior to assume that Empire would make the lease in November and that Shell’s would agree to pay a substantial rental and undertake the improvements of the premises, unless there was concluded a two-way deal between Empire and Westerman or, possibly, a three-way deal between Westerman, Empire and McKelvey prior to November 17th, the date of the execution of the lease.
By the letter of December 7th, Empire’s attorney also represented to the Beverage Department [in an effort directed toward reinstatement of the license] that Gala had renounced and relinquished all interest in the license. The petition for modification of order states, in paragraph 3 thereof:
* * * * * *
“That Gala Show Place, Inc., the last tenant to occupy the premises, and the last holder of a State and County Beverage License No. 23 433, has abandoned and deserted the premises on the date the District Court of Appeal upheld the Directors Order of Revocation, and your petitioner, as president of Empire Corporation, is now in actual physical possession of said premises.” [emphasis added]
* * * * * *
The letter of December 7, 1962, supplementing the petition, further states that:
* * * * * *
" * * * that Gala Showplace, Inc., the licensee of record, has executed a transfer application, in response to a distress notice given to it, pursuant to Chapter 83 of the Florida Statutes, so that Gala Showplace, Inc. has thereby divested itself of any claim or right to this license, should the Petition be granted. * * * " [emphasis added]
* * * * * *
Finally, it is noteworthy that a valid license was worth no more than $30,000.00 at the time of the alleged sale, yet Westerman claims that Shell’s made an oral contract to pay an amount which equals almost three times this much. The license was completely valueless to Westerman and Gala, since they could not operate under it and it was only reinstated in order to accommodate the landlord, Empire, which had agreed to furnish a liquor license to its new tenant, Shell’s.
The Supreme Court of Florida has commented on testimony beyond normal experience. See: Howell v. Blackburn, 100 Fla. 114, 129 So. 341, wherein the court said:
# ;fc % % *
“ * * * There is convincing logic in the following statement from 1 Moore on Facts, p. 222: ‘While the testimony of an unimpeached witness is not to be arbitrarily disregarded, it must be measured by the standard of common experience and business usage. The statement that a man under certain circumstances did something which we know from experience not one in a thousand would do under the same circumstances is discredited by the inherent improbability of the statement. It is more rational to believe that the testimony is intentionally or mistakenly untrue than it is to believe that the marvelous occurred.’ See also, to same effect, Whelen v. Osgoodby, 62 N.J.Eq. 571, 50 A. 692; Knowles v. Knowles, 86 Ill. 1, 8.”
* * * * * *
See, also, the statement in Catlett v. Chestnut, 107 Fla. 498, 146 So. 241, stating as follows:
;Jc i}c % }ji
“Much of the evidence offered in plaintiff in error’s behalf, while uncontro- *281 verted, appears to be discredited in many particulars. Such evidence is not necessarily binding upon a court in the consideration of a motion for a directed verdict. Testimony may be unimpeached by any direct evidence to the contrary, and yet be so contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence, or so contradictory within itself, as to be subject to rejection by the court or jury as a trier of the facts.”
* * * * * *
Westerman’s inaction clearly contradicts any claim of an express agreement between him and McKelvey [Shell’s City, Inc.]. The circumstances of the reinstatement of the license and the execution of the lease all controvert Westerman’s story. The judgment in this case, for all practical legal purposes, is predicated upon nothing but the oral claim of Westerman who sat idly by for almost four years and made no demand whatsoever until all partit", who could support a defense for the defendant, had died.
Not only do the documents and the sequence of events make questionable Westerman’s testimony, but the credibility of his testimony is considerably weakened by the fact that the license was initially revoked for the “B girl” activity conducted on the premises. Admittedly, the license only had a market value of $30,000.00 and to award the sum of $90,000.00 upon such unbelievable and uncorroborated testimony not only results in a gross miscarriage of j ustice but it opens the door to all conceivable forms of fraud.
Therefore, for the reasons above stated, the final judgment here under review be and the same is hereby reversed and remanded with directions to enter a judgment for the defendant.
Reversed and remanded, with directions.

. It would appear that the final judgment has a fundamental error in it in awarding a judgment in favor of Wester-man individually, when his personal claim was withdrawn at time of trial.

. It is noted that the application explicitly stated that a “Sheldon Cooper” would be manager of the Shell’s package store, directly negating Westerman’s claim of an oral employment contract with Shell’s as manager of the store.

. While this testimony might seem to be in violation of the dead man’s statute [§ 90.05, Fla.Stat., F.S.A.], a review of applicable authorities reveals it comes within an exception thereto. See: Tharp v. Kitchell, 151 Fla. 226, 9 So.2d 457; compare Olshen v. Robinson, Fla.App.1971, 248 So.2d 534.