265 So.2d 43 (1972)
Max WESTERMAN, Individually and As Trustee for Gala Showplace, Inc., a Dissolved Florida Corporation, Petitioner,
v.
SHELL'S CITY, INC., a Florida Corporation, Respondent.
No. 42162.
Supreme Court of Florida.
July 19, 1972.
Alan H. Rothstein, Miami, for petitioner.
Thomas H. Anderson and Robert C. Sommerville, of Shutts & Bowen, Miami, for respondent.
PER CURIAM:
Upon petition for certiorari to review the opinion of the Third District Court of Appeal at 257 So.2d 276 (1971), conflict appears with the myriad cases[1] *44 setting forth the rule that an appellate court cannot substitute its judgment by a reevaluation of the evidence, vesting jurisdiction here under Fla. Const. art. V, § 4(2), F.S.A.
The obvious reweighing of the evidence in a de novo consideration thereof is apparent in the following several passages in the district opinion:
"It is contrary to human behavior to assume that Empire would make the lease in November and that Shell's would agree to pay a substantial rental and undertake the improvements of the premises... ." (P. 280)
* * * * * *
"Finally, it is noteworthy that a valid license was worth no more than $30,000.00 at the time of the alleged sale, yet Westerman claims that Shell's made an oral contract to pay an amount which equals almost three times this much... ." (P. 280)
* * * * * *
"Westerman's inaction clearly contradicts any claim of an express agreement between him and McKelvey [Shell's City, Inc.]. The circumstances of the reinstatement of the license and the execution of the lease all controvert Westerman's story... ." (P. 281)
"... Admittedly the license only had a market value of $30,000.00 and to award the sum of $90,000.00 upon such unbelievable and uncorroborated testimony not only results in a gross miscarriage of justice but it opens the door to all conceivable forms of fraud." (P. 281) (emphasis ours)
These were all matters for the trial judge who entered his findings and conclusions in a comprehensive final judgment with which the district court apparently did not agree; this was nevertheless for the trial judge in these circumstances wherein the evidence supported the judgment within the law and it should not be disturbed.
This cause was tried before a very able and experienced circuit judge who himself had earlier served his state as a highly-respected beverage commissioner. Both parties chose to waive jury and (perhaps for the very reason of the eminent jurist's qualifications and background) chose to have him try the case without a jury.
Involved was the sale of a liquor license on Miami Beach by Gala Showplace, Inc., to Shell's City, Inc., a chain retail liquor establishment in Dade County. Westerman had been individually interested and was at the time of the sale acting as Trustee for Gala Showplace, Inc., which had gone out of business after losing the liquor license for B-girl activities.[2] Shell's City stepped in and leased the premises and had spent $30,000.00 on renovations but was without a liquor license to operate. Naturally this made the license held by Gala Showplace of particular value because none other was available under the Miami Beach ordinance, which would not allow the transfer of a liquor license beyond 300 ft. Under these circumstances Westerman negotiated with Shell's City's Vice President  General Manager, George McKelvey, to purchase Gala's license. Gala's volume in the past had been limited and of course was now closed and future volume was uncertain. Against this background, the parties agreed on a purchase price for Shell to pay Gala 2% of the gross sales of the package liquor store to be operated by Shell's on the premises, for the first five years of its 15-year lease, the first of such annual payments to be due on January 1, 1964.
The transfer of the liquor license was made and Gala completed performance on its part but when Shell failed to make payment on January 1, 1964, and the following *45 January 1965, the petitioner filed suit following non-payment in January 1966 for accounting and for payment.
George McKelvey died 14 days after the first payment was due, for which respondent suggests bad faith and asserts laches on the part of petitioner in pursuing the suit after respondent's principal witness was dead, as well as another of respondent's witnesses who later died. This was of course another matter for the trial judge's consideration and he found adversely to respondent upon this contention.
More than ample competent substantial evidence supports the non-jury judgment for petitioner for his 2% over the five years with interest. A beverage agent, H.H. Wood, who was in charge of the licensing division of the State Beverage Department in Miami at the time the license was transferred testified regarding McKelvey's agreement on behalf of his principal Shell's City to pay a percentage of gross sales in Shell's operation under the liquor license. An attorney in the matter also substantiated an agreement from discussions with McKelvey. There is likewise some documentary evidence consistent with the purchase; this is reflected in the affidavit of McKelvey as well as of Westerman, which was required to be executed in the transfer of the license to Shell's City and which confirmed the purchase. Additionally, Shell's City's lease of the premises required that it "shall pay for all licenses required to operate a liquor store" in its lease from the landlord, Empire Corporation.
Respondent asserts that Gala actually had lost its interest in the liquor license and that the transfer was really "in response to a distress notice given to it" by the landlord Empire and thereby "Gala had divested itself of any claim or right to this license." In fact, however, there were no distress proceedings against Gala and no legal support for this position. Moreover, the transfer was directly between petitioner and respondent.
It appears to be undisputed that Shell's City never paid anything to anyone for this liquor license; Gala Showplace did not receive any compensation or consideration for its transfer to Shell's City, for which it had paid initially the $30,000 mentioned in the district opinion for the license, the value of which had of course become enhanced and was of increased value to Shell's City by virtue of the location and in all events was a matter of bargaining between the parties.
The 2% was simply the means of payment derived as agreeable to both because of the uncertainty of the past and future operations at that location. This uncertain percentage arrangement may also well have been a basis for the larger purchase price which resulted, simply because of what turned out to be a very successful operation under the license by Shell's City. It could well have been less. Both parties chose to gamble on the future operation in payment, whether it be greater or lesser.
Shell's City's response is that: "The subject liquor license was worthless to Westerman." It was referring to the earlier revocation of the license which, however, had been reinstated with the view that it was to be transferred from Gala to Shell's City, Empire's new tenant. All this, however, hardly contemplated a gratis exchange. Respondent's contention that "the transfer by Westerman to Shell's was a mere formality" hardly comports with normal business practices and particularly in the acquisition of valuable liquor licenses in this state. The accounting and the judgment reflect gross sales of $4 million in these first five years from this "worthless" liquor license.
Respondent urges Howell v. Blackburn, 100 Fla. 114, 129 So. 341 (1930); Catlett v. Chestnut, 107 Fla. 498, 146 So. 241 (1933); and World Ins. Co. v. Kincaid, 145 So.2d 268 (Fla.App.1st 1962), cert. denied 157 So.2d 517 (Fla. 1963), regarding the rejection of "inherently incredible and improbable testimony or evidence," *46 as support for the district court's reversal of the trial judge. This rule, however, does not extend to a reevaluation of that evidence by the appellate court in arriving at a conclusion of improbability. In any event, there is ample, competent substantial evidence supporting the judgment, all of which withstands the test of rejection as totally "unbelievable and improbable on its face" as would be required under the rule urged by respondent.
Finally, respondent suggests that the payment of a percentage of gross sales to petitioner as a "person interested with the applicant either directly or indirectly in the business for which the license is sought" would be in violation of that provision of Fla. Stat. § 561.17, F.S.A., regarding applications for Florida beverage licenses and therefore that the contract for payment would be statutorily prohibited.[3] This means of payment without further contact or participation by the petitioner with the business does not place him in a position of having "an interest" in the license which has already been completely transferred and conveyed over and accordingly would not be in violation of that prohibition in the statute which is to keep pure the operation of liquor establishments by persons deemed suited to be in that business.
Certiorari is granted; the opinion of the district court is quashed with directions to reinstate the chancellor's final judgment herein.
It is so ordered.
ROBERTS, C.J., and CARLTON, ADKINS, McCAIN and DEKLE, JJ., concur.
NOTES
[1] Pope v. O'Brien, 213 So.2d 620 (Fla. App.1st 1968); Smith v. State, 118 So.2d 257 (Fla.App.2d 1960); Cole v. Cole, 130 So.2d 126 (Fla.App.1st 1961); and Sponholtz v. Sponholtz, 190 So.2d 572 (Fla. 1966).
[2] Gala Showplace, Inc. v. State Beverage Dept., 143 So.2d 578 (Fla.App.3d 1962); further proceedings in Keating v. State, ex rel. Ausebel, 167 So.2d 46 (Fla.App. 1st 1964), quashed in Keating v. State, ex rel. Ausebel, 173 So.2d 673 (Fla. 1965).
[3] Goldring v. Johnson, 65 Fla. 381, 62 So. 212 (1913); Schaal v. Race, 135 So.2d 252 (Fla. App.2d 1961).