THE STATE OF IOWA, Appellant, v. A. R. SEVERSON *et al.*, Appellees.

Liquor Nuisance: INJUNCTION: INSUFFICIENT EVIDENCE.

*Appeal from Winneshiek District Court.*—HON. W. A. HOYT, Judge.

SATURDAY, JANUARY 28, 1893.

NOVEMBER 12, 1890, John B. Kaye, county attorney, commenced this action in equity to enjoin the defendant Severson from maintaining a liquor nuisance upon the premises described, and the defendant Barthell, as owner of said premises, from permitting the same to be so kept and used. Barthell answered, admitting that he had owned the premises since September 9, 1890, under a sheriff's deed on a foreclosure sale against Severson; that Severson and wife were and had been in possession of the premises for some years; and that, after acquiring title, he leased the premises to them by the month. He denied that intoxicating liquors were kept or sold on said premises with his knowledge or consent, and alleged that, upon being served with notice of this action, he caused notice to be served on Severson to quit the premises. Severson answered, admitting that Barthell is the owner of the premises, and denying every other allegation in the petition. The case was submitted at the February term, 1891, and judgment entered dismissing the action. Notice of appeal was served upon the proper parties in August, 1891, and the clerk secured his fees for a transcript.—*Affirmed.*

*John B. Kaye*, for the State.

*George W. Adams* and *E. R. Acers*, for appellees.

GIVEN, J.—The case being before us for hearing *de novo,* we inquire whether, under the evidence, the plaintiff is entitled to an injunction as prayed. The premises described are situated in the business portion of the city of Decorah, and had been owned and occupied by the defendant Severson as a residence and place of business for some years prior to September, 1890. The defendant Barthell, having become the owner of the premises, leased the same by the month to the defendant Severson, who continued to occupy them until the commencement of this action. It appears that Severson had been prosecuted for selling liquors contrary to law in 1887, 1888, or 1889, and we infer from the evidence that during those years, or some part of them, he had maintained the premises as a place for the unlawful keeping and selling of intoxicating liquors. The inquiry now before us, however, is whether the place was so kept or used at the time of the commencement of this action, November 12, 1890.

The evidence relied upon by appellant is, in substance, this: One Anderson testifies that he had been in there several times the past six months. That he drank a glass of beer in there last summer. "Think it was in the first part of July." That Ed. waited on him. "He gave me a bottle of beer the first part of July. I paid twenty cents for it. I drank it out in the back part there. Only drank that one bottle of beer there. That was the time the original package was, in June, or about the fourth of July. Was in there afterwards, and he said he did not have anything to sell; after the original package was stopped, he quit." It is a matter of common knowledge that about that time many saloon keepers engaged in selling intoxicating liquors in what they claimed to be the original package, and that, upon the passage of what is commonly known as the "Wilson Bill," by congress, ceased the traffic. It is true it is not pleaded or proven that the defendant Severson was keeping and selling intoxicating liquors as the agent of any person, or that his sales were in the original package, and yet we think the known fact so far explains the sale to Anderson as that we are not justified in inferring therefrom that Severson was maintaining a nuisance at the commencement of this action, in November, 1890.

Mr. Hargreaves, an officer of the law, and Mr. Seavey, who assisted him, testify to finding one small keg one-third full of beer, seven half-pint bottles of whisky, and a jug with some whisky in it, in a shed back of and adjoining the main building, when making a search, October 4, 1890. The evidence shows that Severson and his wife occupied the upper rooms as their residence during all the time they were in the buiding; that previous to October, 1890, the front room on the ground floor was kept by Mrs. Severson as a millinery and notion store; and that in the next room a small stock of groceries, tobacco, fishing tackle, etc., was kept. Mr. Hargreaves states that, at the time of the search, there was nothing in the shed except three big kerosene cans, and some such stuff. There were no bar or chairs. There were a few glasses there. That a notion shop was in the front room, and in the next a billiard or pool table, and that the next was vacant. It would seem from this evidence that the grocery

business was not being carried on in the premises at the time of the search October 4, but the place was one of public resort, because of the pool table and notion store being kept therein. Being a place of public resort, the presumption is, under section 2392, McClain's Code, that the liquors found were kept for unlawful sale. We think, however, that this presumption is so far rebutted by the evidence of Anderson as not to warrant the conclusion that liquors were being kept and sold unlawfully at the commencement of this action. The more reasonable conclusion is that these liquors were on hand at the time Severson abandoned the right to sell in the original packages.

Another circumstance relied upon by the plaintiff is the reputation of the place. Mr. Hargreaves states that, being an officer of the law, he was around the town most of the time during the summer and fall; that he did not hear that Severson was keeping a saloon in this place; that he did hear of a good many, but not of his; that Severson might have run the saloon, and he not have known or heard of it. Mr. Seavey states that he had heard much about it lately. Mr. Gibson states that he had heard it frequently said that liquors were sold there about the time of the dedication of the college. We think Mr. Hargreaves was in the way to know the reputation of the place, and that what Mr. Gibson heard is attributable to its former reputation, rather than to what was being carried on about the time of the commencement of this suit.

Another circumstance relied upon by the plaintiff is that on the day of the dedication of the college, October 14, 1890, large numbers of people were in the streets in the vicinity of these premises, some of whom were seen going in and out of the building. The evidence shows that a great many persons visited the city that day, and that the streets were thronged with people, in the business parts of the town. Mr. Kaye testified that in October he saw five or six large-sized kegs of beer on the train coming to Decorah marked "A. R. Severson." It is not shown that these kegs of beer were shipped to Decorah, or that they were ever delivered to this defendant Severson. Our opinion is that the evidence does not warrant the conclusion that the defendant Severson was maintaining a nuisance, as alleged, at the time of the commencement of this action. There is no evidence whatever to show that the defendant Barthell knew of or permitted the keeping or selling of intoxicating liquors upon said premises at any time after he became the owner thereof.

Question is made as to the right of John B. Kaye to take and prosecute this appeal, but the view we take of the case, upon its merits, renders it unnecessary that we consider that question.

Our conclusion is that the judgment of the district court should be AFFIRMED.