E. HORN REALTY AND INVESTMENT COMPANY *v.*
STATE OF INDIANA, EX REL.

[No. 26,287.   Filed January 30, 1933.]

*William D. Hardy*, for appellant.

*E. Menzies Lindsey* and *Thomas W. Lindsey*, for appellee.

ROLL, J.—This is a suit in equity, brought under the so-called padlock provisions of ch. 48, §25, Acts 1925; §2741 Burns 1926 Statute, to abate a liquor nuisance in the city of Evansville, Indiana.

The complaint was in one paragraph and charged appellant and one Robert Haines with maintaining a place, described therein, where intoxicating liquors were manufactured, sold, bartered or given away, in violation of law.

There was a trial before the court and a finding and judgment in favor of defendant, Haines, and against the defendant E. Horn Realty and Investment Company. The judgment against appellant was to the effect that appellant had knowingly suffered a nuisance to be maintained on the premises described, and that said defendant should be restrained and enjoined from purchasing, receiving, manufacturing, transporting, shipping, possessing, selling, . . . or otherwise handling or disposing of any intoxicating liquor, in, or upon the premises described in the complaint, and that such premises should not be occupied for a period of six months unless a bond in the penal sum of $1,000 payable to the State of Indiana should be given, conditioned as provided by law, and that plaintiff should recover $200, as attorney's fee, as part of the cost of the action.

Appellant filed a motion for a new trial, wherein he assigns two reasons therefor: First, the decision of

the court is not sustained by sufficient evidence; Second, that the decision of the court is contrary to law, which motion was overruled, and appellant appealed to this court.

The evidence introduced by appellee shows, in substance, that appellant was the owner of the real estate described in appellee's complaint, which was a one-story brick building located at No. 15 Northwest Fifth street, in the city of Evansville, and used as a restaurant property. That on August 9, 1930, the police officers had a personal warrant for Robert Haines, and when they went in to serve the warrant, Haines was serving the iceman a drink of liquor. The officers seized the liquor and found a small milk pitcher full of liquor sitting on the kitchen sink. They arrested Haines, but he has not yet been tried. Plaintiff also made proof that the general reputation of the premises as a place where intoxicating liquor was sold, was bad. That one Russell Gentry was the occupant of the premises, and that Haines was an employee working in the restaurant.

The only evidence introduced by appellee was a lease executed the latter part of March, 1930, to one Marie Gentry for a period of one year. It was admitted by appellant that it was the owner of the property described in the complaint. No evidence was introduced, and apparently no effort was made, to introduce any evidence whatever that appellant had any knowledge, either actual or constructive, that the tenant or occupant of the premises was selling or in any way dealing in intoxicating liquor contrary to law, or in such a way that a nuisance was created within the meaning of §2740 Burns 1926, Acts 1925, p. 144, §24. No evidence whatever was introduced as to what a reasonable attorney fee would be for appellee's attorney.

Appellant says that the evidence is insufficient to sus-

tain the finding of the court, for the reason that there is a total lack of evidence to prove it had any ▆ knowledge whatever that the occupant or tenant was maintaining a nuisance on its premises, and that such knowledge on its part is a condition precedent to the imposition of such a penalty as is provided in the statute.

We will consider this question upon the assumption that the evidence in this case sufficiently shows that at the time the present action was commenced, there was in fact a nuisance being maintained on appellant's premises by the occupant or tenant.

In §24 of the Acts 1925, p. 144, *supra,* is the definition of a liquor nuisance, and it is also provided therein that persons maintaining such nuisances may be criminally prosecuted as misdemeanants. In the second sentence it is provided that: "and if it shall be proved that the owner of any building or premises has knowingly suffered the same to be used or occupied" as such nuisance, "such building or premises shall be subject to a lien for, and may be sold to pay, all fines and cost assessed against the occupant of such building or premises for any violation of this act; and such lien may be enforced by civil action in any court having jurisdiction." It follows, conversely, that, if the owner of premises, made a nuisance by his tenant, has no knowledge that the premises are being so illegally used, no lien would lie against the property for fines and cost assessed against the nuisance-maintaining tenant. While it is true we have instances of liability without fault, such as the Workmen's Compensation Act, but the general rule of the common law is otherwise—that persons innocent of actual or imputed wrongdoing shall not be penalized criminally under the guise of a civil action. The construction adopted by the lower court would frequently result in depriving an entirely inno-

·cent owner of premises of any use or income from his property for six months or more, because the nuisance-creating tenant would frequently be merely a tenant at will, and, if put out of business, rendered financially irresponsible. Only very plain language would warrant a construction so unjust and so inconsistent with elementary principles as to property rights.

Moreover, the provision in §24, making the premises of the owner liable to fine and costs only in case the owner has knowledge that his premises are being used for nuisance purposes, makes strongly against the contention that the legislature intended by §25, to provide that the innocent owner might find his premises padlocked for a period of time without having had knowledge and a resultant opportunity to abate the nuisance —a penalty, in fact, that frequently would cost the owner much more than a large direct fine. If knowledge is requisite in order to make premises responsible for the fines imposed upon the creator of the nuisance, all the more knowledge should be considered a condition precedent to the imposition of the drastic punishment of padlocking the premises for six months.

We are not unmindful that some courts have adopted a different view of this question. *United States* v. *Boynton* (1924), (D. C.) 297 Fed. 261. Nevertheless we are unable to accord with that construction.

The statute, while in some respects is preventive in its nature, yet it partakes strongly of the punitive character, and while the action is in equity, the actual result is as if it were quasi-criminal. We are of the opinion that instead of applying the rule of liberal construction to this particular statute, we should rather adhere to the rule of strict construction. It seems to us that if the legislature had intended to authorize the courts to penalize innocent owners of premises on which their lessees are maintaining a liquor

nuisance, it would have made that purpose so clear that there would have been no room for construction. This is not a proceeding in rem. The statute does not authorize the court to find the premise guilty as does some statutes. The action is in equity, and equity acts in personam against a person who creates or maintains a nuisance.

We do not wish to be understood as saying that the owner of premises can shut his eyes to the obvious and then plead lack of knowledge and avoid the consequences. Owners who have been notified that their premises are being made nuisances by their tenants, who fail, by repossession of the premises or by other effective means to abate such nuisances, may, on familiar principles of equity be held responsible as persons maintaining the nuisance. Such a construction of the statute leaves it effective and relieves it of the very grave danger of working a hardship upon the innocent and well meaning property owner. *United States v. Schwartz* (1924), (D. C.) 1 Fed. (2nd Ed.) 718; *State* v. *Severson et al.* (1893), 88 Iowa 714, 54 N. W. 347; *State, ex rel. Lyon* v. *Union Social Club et al.* (1909), 82 S. C. 142, 63 S. E. 545. Woollen and Thornton on Intoxicating Liquor, §587, p. 988. For the reasons above set out we hold that the finding was not sustained by sufficient evidence and is therefore contrary to law, and the lower court should have sustained appellant's motion for a new trial.

Section 2742 Burns Ann. St. 1926, being §26 Acts 1925, p. 144, provides that: "In case judgment is rendered in favor of the plaintiff in any action brought under the provisions of §§24 and 25 of this act, the court rendering the same shall also render judgment for reasonable attorney's fees in such action in favor of the plaintiff and against the defendant therein. . . ."

The complaint herein alleged that a reasonable fee for plaintiff's attorney was $300.00. No evidence whatever was offered at the trial as to attorney's fee, but the court entered judgment in part as follows:

"It is further ordered, adjudged and decreed by the court that the defendant, E. Horn Realty and Investment Company, pay E. Menzies Lindsey, attorney for the plaintiff herein, the sum of Two Hundred Dollars ($200.00) as and for plaintiff's attorney's fees in this action, and that said defendant pay the costs of this action, and that upon the failure of said defendant to pay said costs and attorney's fee, the said premises heretofore described be, and the same are hereby, decreed to be impressed with a lien for the amount of said plaintiff's attorney fee and said costs, and said plaintiff shall have execution therefor."

Appellant urges that there was no evidence to support this part of the judgment, and that the lower court arbitrarily fixed the amount of the attorney fee without any basis therefor. While it has been decided by this court that the trial court may not be bound by the evidence lawyers might give as to the value of attorney services in a case, yet we think the court should not allow judgment for attorney fees in this case without some evidence as to the reasonable value thereof. Such a procedure would be subject to great abuse, and a trial court, under such power, could be manifestly unjust to either the plaintiff or the defendant without any remedy on appeal. If either party should feel aggrieved as to the amount fixed by the court and should appeal to this court, there would be nothing upon which we could determine the justice of such a question. Even if we should place it upon the principle of "sound discretion" of the court, there would be nothing from which this court could reason and determine the question. If plaintiff desired to recover attorney fees, he should have made proof of the reasonable value of such services.

Judgment reversed with instructions to the lower court to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.