173 So.2d 673 (1965)
Richard B. KEATING, as Director of the State Beverage Department of the State of Florida, Petitioner,
v.
STATE of Florida ex rel. Bernard AUSEBEL, Respondent.
No. 33771.
Supreme Court of Florida.
March 31, 1965.
Rehearing Denied April 26, 1965.
*674 Young J. Simmons, Ocala, for petitioner.
David U. Tumin, of Rothstein & Tumin, Miami, for respondent.
William G. O'Neill, Ocala, for amicus curiae, Shell's City, Inc.
ERVIN, Justice.
We are petitioned for a writ of certiorari to review a decision of the District Court of Appeal, First District, in this case, reported in Keating v. State of Florida ex rel. Ausebel, 167 So.2d 46 (Fla.App.).
It appears that in February of 1962, Thomas Lee, petitioner's predecessor as Beverage Director, revoked with prejudice beverage license No. 433 issued to Gala Showplace, Inc., and operated as Club 23 at 2300 Collins Avenue in Miami Beach. The order, in addition to revoking the license, further provided that no license could be issued for the location, 2300 Collins Avenue, for two years from October 1, 1962. Attempts to have the revocation order reviewed in the District Court of Appeal, Third District, were unavailing. Gala Showplace, Inc. v. State Beverage Department, 143 So.2d 578 (Fla.App. 1962).
Beginning in October of 1962, and continuing through the end of the year, representatives of Empire Corporation, the landlord of the premises at 2300 Collins Avenue, sought by petition and supplementary correspondence to persuade the Beverage Department to alter the revocation order and quarantine placed on the location. As grounds for the request, the landlord indicated that it held a 99-year lease on the premises, that the premises had been operated under a beverage license for 17 years and represented a substantial investment on the landlord's part. Further, the landlord indicated that due to a misunderstanding as to the terms of the Department's order, it had leased the premises to Shell's Super Stores, Inc., for use as a package store, and had agreed to furnish the requisite beverage license. The landlord alleged that lessee Shell's had already expended $30,000 in renovation of the premises and pledged that should the license be reinstated the former "trouble spot" would become a community asset.
In January, 1963, by successive orders, the then Beverage Director granted the landlord's request. The initial order, entered January 24, 1963, amended the original revocation order so as to remove the two year quarantine on the premises. Subsequently, upon a finding that "the revocation would work an undue hardship on the landlord since the city zoning ordinances prohibit the issuance of a new license for this location," the Beverage Director, by order of January 31, 1963, amended the original revocation to change the revocation to a suspension terminating on January 30, 1963. This amendment provided that the license be sold to a bona fide purchaser and that application for transfer be made within 30 days. The conditions were met and, on February 15, 1963, transfer of the license to Shell's City, Inc., was approved.
The petitioner, the incumbent State Beverage Director, contends the respondent had no legal standing to challenge in his mandamus action below the order of petitioner's *675 predecessor, the then State Beverage Director, amending a revocation of a beverage license by changing it to a suspension for a period of time. Petitioner contends the District Court of Appeal in agreeing that respondent had the requisite standing to maintain his action conflicted with: Baker v. State ex rel. Hi-Hat Liquors, Inc., 159 Fla. 286, 31 So.2d 275; Turner v. City of Miami, 160 Fla. 317, 34 So.2d 551 and Donovan v. Schott, Fla., 58 So.2d 847.
It is necessary to refer only to the Hi-Hat Liquor, Inc., case, since a comparison of it with the instant case discloses conflict involving our certiorari jurisdiction.
The gist of the Hi-Hat Liquor, Inc., case is that a citizen with no legal or special interest in the result other than a public interest in having the law executed and the duty in question enforced, has standing to proceed against the State Beverage Director. Also, this case holds a person might have standing to maintain such an action enforcing a special interest or private right but in such event his right to relief must clearly appear. However, the court held Hi-Hat Liquors, Inc., was a beverage licensee competitor of Baker, its adversary in the litigation, and as such licensee had no special right or private interest sufficient to entitle it to maintain the action, since neither Hi-Hat Liquors, Inc., nor Baker, both being beverage licensees, had anything more than a permit to engage in the liquor business; and the law did not restrict competition between them and the profits or commercial advantages the Hi-Hat Liquors, Inc., might gain in the elimination of Baker's competition was too elusive and uncertain to sustain the action.
In this case respondent alleged in his mandamus action that he is a citizen of Miami Beach, Dade County, Florida; that he is the holder of a package store beverage license and operates his store in Miami Beach one block from his competitor, Shell's City, Inc., the beneficiary of the action of the Beverage Director in modifying the revocation of the beverage license covering the package store operated by Shell's City, Inc., and that respondent's package store business is in jeopardy and is suffering an economic loss of approximately 50 per cent of its normal trade because of the action of the Beverage Director in reinstating a null and void license for the benefit of his competitor. The Circuit Court, with the District Court of Appeal affirming, held the Director had lost jurisdiction to reinstate the license. See 167 So.2d 46 (Fla.App.).
These allegations subjected to the tests prescribed in Baker v. State ex rel. Hi-Hat Liquors, Inc., supra, disclose respondent has no standing to maintain his action when viewed only in the context of that case. Although he is a citizen of the city, county and state where the alleged duty of the Beverage Director is sought to be enforced, his special interest or private right is no greater than was that of Hi-Hat Liquor, Inc. His special interest is only that of a beverage licensee operating a liquor business in competition with Shell's City, Inc.
Having determined a conflict exists conferring certiorari jurisdiction upon us, we address ourselves to the merits.
We are convinced that we should recede from Baker v. State ex rel. Hi-Hat Liquors, Inc., supra, insofar as it holds that a licensee competitor has no standing to maintain an action of the kind here involved merely because as a business competitor the profits or commercial advantages which he might gain in eliminating his competition "are too elusive and uncertain to sustain the action."
This Court has approved actions brought by plaintiffs seeking to nullify or restrain acts of state officers favoring their competitors. In such cases the interest of the plaintiffs arose primarily out of a competitive situation. For example, in Volusia Jai-Alai, Inc. v. McKay, 90 So.2d 334, one of the plaintiffs, the Volusia County *676 Kennel Club, sought to set aside a permit issued by the Racing Commission to the defendant, Volusia Jai-Alai, and enjoin any action under the permit, any construction of a fronton and any application for dates to operate. See also State ex rel. West Flagler Amusement Co. v. Rose, 122 Fla. 227, 165 So. 60.
Further considering the merits, we have reached the conclusion the action of the State Beverage Director under challenge is not illegal.
The Circuit Court and the District Court of Appeal appear not to have considered the impact of F.S. § 561.58, F.S.A., which has special application where a license is revoked covering a landlord's premises. Said section reads as follows:
"Issuance of license for a prior license revoked.  When a license is revoked by the director under the authority granted in § 561.29, it shall be within the discretion of the director to prohibit or permit a license provided for in §§ 561.34 and 561.35 to be issued for the location of the place of business formerly operated under such revoked license; provided the maximum period of time that any such license shall be prohibited by the director from any such place of business shall be two years from the first day of the succeeding October following such revocation."
Where a beverage license is revoked by the Director pursuant to F.S. § 561.29, F.S.A., covering a landlord's premises, F.S. § 561.58, F.S.A., provides
"* * * it shall be within the discretion of the director to prohibit or permit a license * * * to be issued for the location of the place of business formerly operated under such revoked license; * * *"
but the prohibition of a license for the location may only extend for a maximum of two years from October first following the revocation.
It appears to us that in our consideration of F.S. § 561.58, F.S.A., we should answer two questions:
(1) Does F.S. § 561.58, F.S.A., violate the constitutional guarantees of due process and equal protection when it permits the Beverage Department to issue a so-called padlocking order without notice to the landlord, and without affording the landlord an opportunity to be heard?
(2) Does a landlord have a protectable constitutional right to have his premises used for the sale and consumption of alcoholic beverages?
Establishments for the sale of intoxicating beverages may not to some be a most desirable business; but
"Even though a liquor license may have the character of a mere privilege insofar as governmental regulation of the alcoholic beverage industry is concerned, it must be recognized that in this state, as well as in many other states, due to the limitations respecting the number and location of liquor establishments and the conditions under which the license is issued, a liquor license has come to have the quality of property, with an actual pecuniary value far in excess of the license fees exacted by the state, county, and city. See 30 Am. Jur., Intoxicating Liquors, Section 140, page 329; Cordano's Appeal, 91 Conn. 718, 101 A. 85; Tracy v. Ginzberg, 189 Mass. 260, 75 N.E. 637, affirmed in 205 U.S. 170, 27 S.Ct. 461, 51 L.Ed. 755; Rowe v. Colpoys, 78 U.S.App. D.C. 75, 137 F.2d 249, 148 A.L.R. 488. Our statutes expressly recognize the transferability of a liquor license. Section 561.32, Florida Statutes, 1949, F.S.A." House v. Cotton, Fla., 52 So.2d 340.
*677 See also Kline v. State Beverage Department of Florida, Fla., 77 So.2d 872; Yarbrough v. Villeneuve, 160 So.2d 747 (Fla. DCA), and Segal v. Simpson, 121 So.2d 790 (Fla.DCA).
It is indeed a serious matter for government to confiscate property, or to interfere with any legitimate use thereof, without the payment of just compensation and ordinarily will be tolerated only in the exercise of the police power to protect the public health, safety or morals. Under no circumstances can private property be taken by the state without due process of law, and in order that requirements of due process be satisfied the owner must be afforded procedural as well as substantive due process. It is necessary that before depriving the landlord of the "privilege," if not the right, to have his premises so used, he should be given notice that he may be deprived of such use and an opportunity to make a defense and to be heard in opposition to such action on the part of the State. Notice and hearing, if desired by the licensee, are the minimum required before a liquor license can validly be suspended or revoked by the Director; and we think the landlord is entitled to no less before his premises are "padlocked" for use as a liquor establishment. Cf. Kentucky Alcoholic Beverage Control Board v. Jacobs (Ky. 1954), 269 S.W.2d 189; McNelis v. Commonwealth (1938), 171 Va. 471, 198 S.E. 498; McColl v. Hardin ex rel. State (Tex.Civ.App. 1934), 70 S.W.2d 327; E.H. Horn Realty & Investment Co. v. State ex rel. Lindsey (1933), 204 Ind. 342, 184 N.E. 175; and Garrett v. State ex rel. Matthews (1938), 235 Ala. 457, 179 So. 636. In the last cited case the court said:
"Padlocking, a severe remedy depriving one of the use of his property for lawful purposes, should be exercised only as a necessary measure to enforce the law. Where the party is shown by his conduct to be a persistent violator of the law, determined to evade it, padlocking is proper, but to be modified when it sufficiently appears the property will not be again employed in the conduct of a liquor nuisance."
And in E.H. Horn Realty & Investment Co. v. State ex rel. Lindsey, supra, it was noted that
"The statute, while in some respects preventive in its nature, yet it partakes strongly of the punitive character, and while the action is in equity, the actual result is as if it were quasi criminal. We are of the opinion that instead of applying the rule of liberal construction to this particular statute, we should rather adhere to the rule of strict construction. It seems to us that if the Legislature had intended to authorize the courts to penalize innocent owners of premises on which their lessees are maintaining a liquor nuisance, it would have made that purpose so clear that there would have been no room for construction."
There is no contention in this case that the landlord was involved by knowledge, acquiescence, consent or collusion of any of the wrong-doing of which his tenant was found guilty.
As early as 1921 an analogous question was before this Court in Spratt v. Gray, 81 Fla. 200, 87 So. 760, where the automobile of an innocent owner had been used by another for unlawful transportation of intoxicating liquors, and an attempt was made to forfeit the automobile without giving any notice or hearing to the innocent owner. The Florida Court voided the forfeiture.
Again in McNelis v. Commonwealth (1938), 171 Va. 471, 198 S.E. 493, supra, property which had been padlocked was returned to the owners because the Virginia statute did not afford opportunity *678 for innocent owners to be heard. We quote from the headnote in that case:
"A statute which authorized padlocking a building which had been used in violation of the Alcoholic Beverage Control Act, without affording opportunity for innocent owners to be heard, was unconstitutional to that extent as violative of due process as applied to landlords whose property was padlocked, without notice to them, because of tenant's illegal use, notwithstanding provision in statute under which owners could repossess property by giving bond."
Section 120.22, Florida Statutes, F.S.A., which is a part of the Administrative Procedure Act, provides as follows:
"Hearing guaranteed.  Any party's legal rights, duties, privileges or immunities shall be determined only upon public hearing by an agency unless the right to public hearing is waived by the affected party, or unless otherwise provided by law."
Section 120.23, Florida Statutes, F.S.A., provides:
"Notice of hearing.  Parties affected by agency action shall be timely informed by the agency of the time, place, and nature of any hearing; the legal authority and jurisdiction under which the hearing is to be held; and the matters of fact and law asserted. In fixing the time and place for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives. Each agency shall adopt appropriate rules of procedure for notice and hearing."
It would therefore appear that, even though § 561.58, Fla. Stat., F.S.A., does not provide for a notice and hearing as required by due process of law, this deficiency is supplied by §§ 120.22 and 120.23, Fla. Stat., F.S.A., supra, and it is therefore unnecessary to strike down § 561.58, Fla. Stat., F.S.A., for failure to do so. Section 561.58, Fla. Stat., F.S.A., and the appropriate sections of the Administrative Procedure Act when taken together meet the minimum requirements of due process of law. However, the record in this case fails to show that any notice was provided, or any hearing held, in connection with the rights of the landlord as required by due process and the Administrative Procedure Act mentioned above, prior to the original order quarantining the premises for the two-year period. This is not to say that a landlord under certain circumstances could not be subjected to the penalty of "padlocking" or "quarantine" of his premises for a reasonable length of time, if it should appear after notice and hearing and appropriate evidence that the landlord had participated in, acquiesced in, or condoned repeated violations on the part of a tenant vending intoxicating beverages. Such conduct on the part of a landlord, when established after notice and hearing, could result in a reasonable penalty under exercise of the police power; furthermore, there are no doubt many instances in which the beverage vendor owns and occupies the building in which the retail establishment is operated, and certainly under such circumstances he would be subject to the penalty of revocation and "padlocking" against the sale of alcoholic beverages for a reasonable length of time. The immunity against the "padlocking" power of the Director provided for herein relates to an innocent landlord, not involved in the misconduct of the licensee, complained of by the Beverage Department.
In the opinion of the District Court of Appeal it appears that
"On January 24, 1963, Beverage Director Lee amended the order of revocation by deleting therefrom the provision which prohibited the issuance of a license for those premises for the two year period."
This was the first amendment of the revocation order and it was approved by the *679 Circuit Court and the District Court of Appeal accepted the ruling on this point as a correct one.
It is not apparent from the record in the case the Director gave the landlord requisite notice and a hearing prior to entry of his order quarantining the premises for the two-year period necessary to afford due process in respect to the proposed curtailment of property rights. However, it appears he did consider subsequent applications from the landlord requesting the lifting of the quarantine to allow new management to rent and operate a package store at the location. In such applications, the landlord brought to the attention of the Director the hardship that otherwise would ensue if the large investment in the premises for a beverage location was not put to the use for which it was intended. We believe the hearings granted the landlord subsequent to the entry of quarantine and the action taken by the Director thereto must of necessity relate back to the time of the quarantine in order to afford due process, no notice and hearing having been given the landlord at the time of the quarantine. The Director's action afforded the landlord consideration equivalent to that which apparently would have resulted had notice and hearing been accorded the landlord prior to the quarantine.
The practical effect of the action of the Beverage Director under F.S. § 561.58, F.S.A., in lifting the quarantine or prohibition against a license covering the landlord's premises for the two-year period was to authorize the landlord to consummate a new lease for the premises so the new lessee could operate the package store therein. While technically a new license could have been issued for the new operation, the same result was reached by the Director approving the sale of the liquor business and a transfer of the old license to the new management as an incident to lifting of the quarantine. F.S. Section 561.32, F.S.A., authorizes such transfers although revocation or suspension proceedings have been instituted against a licensee, the same being within the sound discretion of the Director.
In the light of the wide administrative discretion confided in the Director by F.S. Sections 561.32 and 561.58, F.S.A., and other provisions of the State Beverage Laws, we cannot in the context in which we feel constrained to view this case, agree with the decision below that the revocation of the license was irrevocably placed beyond recall or modification.
The petition for certiorari is granted and the judgment below is quashed.
THORNAL, O'CONNELL and CALDWELL, JJ., concur.
DREW, C.J., agrees to judgment.