199 So.2d 504 (1967)
Broward WILLIAMS, State Treasurer and ex-Officio Insurance Commissioner of the State of Florida, and Jack D. Kane, Director of the Division of Financial Responsibility, Appellants,
v.
Eddie J. FERRENTINO and Elaine Ferrentino, Appellees.
No. 67-25.
District Court of Appeal of Florida. Second District.
June 2, 1967.
*507 Earl Faircloth, Atty. Gen., Thomas E. Boyle, Asst. Atty. Gen., Walter E. Rountree, Gen. Counsel, and Charles C. Anderson, Attorney, Tallahassee, for appellants.
Robert E. Beach, of Law Offices of Roney & Beach, St. Petersburg, for appellees.
PIERCE, Judge.
This case started out as an ordinary, run-of-the-mill, negligence suit, but finally wound up as a "real weirdie". And no one is perhaps more responsible than "ol' Father Happenstance" himself.
On October 10, 1963, Llewellyn D. Illingworth and Dean Illingworth filed a complaint in the Pinellas County Circuit Court, Case #16,905 Law, against Eddie J. Ferrentino and his wife, Elaine Ferrentino, for damages arising out of an automobile accident allegedly caused by the negligent driving of an automobile owned and driven by the Ferrentinos. The record here shows nothing further for over three years, at least affirmatively.
On October 26, 1966, a copy of a "Petition for Injunction", entitled in the Circuit Court action, #16,905, was served upon one Jack D. Kane in Tallahassee, as the "Acting Director of the Financial Responsibility Division, State of Florida." The "petition" alleged substantially the following facts: that the suit filed by the Illingworths against the Ferrentinos "resulted in a judgment in favor of" the Illingworths for $6,200.00 plus costs of $172.50; that both the Illingworths and the Ferrentinos contended that, at the time of the accident on August 26, 1962, which precipitated the law suit and subsequent judgment, the American Mutual Fire Insurance Company was insurance carrier for the Ferrentinos and "should be made to satisfy the judgment"; that garnishment proceedings were instituted against the insurance company by the Illingworths in the original negligence suit, #16,905, subsequent to entry of judgment, in an effort to enforce payment thereof; that the garnishment action had "not been resolved", and the company was denying liability as insurer; that on September 14, 1966, Kane issued an order "suspending" the driving licenses of the Ferrentinos, which apparently stemmed from the assumption by Kane that the Ferrentinos were "uninsured drivers" due to nonpayment of the judgment plus the fact that the insurance company was disclaiming insurance coverage; that F.S.Chap. 324, F.S.A., the Financial Responsibility Law, provided that "judgments against an uninsured driver requires suspension of the driving privileges of the judgment debtor, until such time as the judgment is satisfied"; that the Ferrentinos' attorney, on September 26, 1966, had notified Kane "of the circumstances surrounding the judgment * * * and requested the order of suspension be held in abeyance until such time as the parties * * * determine whether or not" the Ferrentinos were actually insured on the day of the accident, but that Kane "refuses and continues to refuse to revoke the order of suspension of the driving privileges of" the Ferrentinos; and that inasmuch as both the Illingworths and the Ferrentinos contended that insurance coverage was in effect it would be "unfair, unjust inequitable and against public policy to suspend the driving privileges of" the Ferrentinos "until * * * the dispute between the parties" was adjudicated, pointing out that if it should be eventually determined that the Ferrentinos were "insured at the time of said accident, they will have no remedy at law or equity for loss of their driving privileges during the period of suspension."
The "petition" thereupon prayed the Court to enjoin Kane from revoking the Ferrentinos' driving licenses until "the dispute" between the parties was settled. Attached to the "petition" were two "orders of suspension" signed by Kane, directed to *508 each of the Ferrentinos, advising that "pursuant to Chapter 324, Florida Statutes [F.S.A.]" their privilege of driving motor vehicles in Florida was "suspended as of 09/19/66 as a result of Unsatisfied Judgment #16,905, dated February 23, 1965, Circuit Court, 6th Judicial Circuit, Pinellas County, Judge Ben Overton, in favor of Llewellyn D. & Dean Illingsworth. Amt $6,200.00 plus costs of $172.50", and further advising that their driver's licenses must be immediately surrendered.
Thereafter, on November 15, 1966, order was entered in Case #16,905 (the title of which had been amplified by "the American Mutual Fire Insurance Company, Garnishee"), ostensibly without notice, as follows:
"IT IS ORDERED that Petitioner's Petition for Temporary Injunction enjoining Jack D. Kane, Acting Director of the Financial Responsibility Division, State of Florida, be granted until such time as the defendants, Eddie J. Ferrentino and Elaine Ferrentino, exhaust their administrative remedy under Chapter 5-13 of the Rules and Regulations relating to the Financial Responsibility Law because the Rules do not provide for a method of supersedeas while orders of suspension are on review. Said Jack D. Kane is enjoined from enforcing his order of suspension of September 14, 1966 against the said defendants, Ferrentino, until further order of this Court."
Thereafter there was filed by "Broward Williams, State Treasurer as ex officio Insurance Commissioner" a "Motion to Dissolve" the temporary injunction on the grounds of: (1) lack of jurisdiction over the subject matter and the person, and (2) improper venue.
On December 16, 1966, the Court entered order, entitled the same as the order of November 15, 1966, which in its pertinent parts is as follows:
"The foregoing cause coming on this day to be heard upon the Motion to Dissolve this Court's Injunction of November 15, 1966, said motion being filed by the Insurance Commissioner for the State of Florida, Broward Williams, and it appearing to the Court that the Insurance Commissioner has not complied with the Injunction of November 15, 1966, and the same having been argued by counsel for the respective parties and duly considered by the Court
"IT IS ORDERED that said Motion shall be put in abeyance until compliance by the Insurance Commissioner."
As before stated, none of the facts allegedly occurring in the Court proceeding, after the complaint was filed, are made to appear to this Court other than by the copy of "Petition for Injunction" served upon Kane.

A  The "Record" Here.
Rule 4.2 of the Florida Appellate Rules, 31 F.S.A. prescribes the procedure for taking interlocutory appeals. Sub-section d of said Rule, headed "Record-on-Appeal" provides as follows:
"No record on appeal shall be required or permitted other than certified copies of the appeal papers and the judgment or order appealed from. Such certified copies shall be served and filed within 15 days from the date of the filing of the notice of appeal. The appendices shall contain full copies of all pleadings and other parts of the record needed to determine the appeal." (Emphasis supplied).
It is obvious from the foregoing that in an interlocutory appeal the record before the appellate Court, showing the pleadings, orders, and proceedings generally in the lower Court, is considerably more informal than when the appeal is from a final judgment or decree. See Rule 3.6 F.A.R. In interlocutory appeals neither the original papers and documents in the lower Court nor a transcript of record need be filed in the appellate Court. Only "copies of all pleadings and other parts of *509 the record needed to determine the appeal" are required to be filed and even these portions, which are only brought to the appellate Court in the appendices of the parties, are not required to bear certification by the Clerk of the lower Court.
We do not construe Rule 4.2 to contemplate the laxity attending the showing made to this Court of the pleadings filed and proceedings had in the lower Court by the parties to this appeal. The "record" here consisted only of copies of the original negligence complaint of the Illingworths against the Ferrentinos, the "petition for injunction", the injunctive order of November 15, 1966, the "motion to dissolve" the injunctive order, and the order of December 16, 1966, holding the latter motion in abeyance. No copies of any other papers filed or proceedings had, including the supposed trial proceedings culminating in the judgment against the Ferrentinos, were brought here.
Rule 4.2 e. F.A.R. requires that "[a]ppendices shall be prepared, filed and served in accordance with Rule 3.7". Rule 3.7 f. (5) provides that "[t]he appendix * * * shall conform with the requirements of the brief as to paper, size, type, spacing and titles." Rule 3.7 e.(1) and (2) provides that "[a]ll briefs shall be printed, typewritten, or duplicated in a clear, readable manner such as by mimeographing, on opaque, white unglossed paper. If printed, the briefs shall be 6 x 9 inches, or within one-half inch thereof; if typewritten or duplicated the briefs shall be on letter-sized paper. The lettering in briefs shall be black and distinct type, double spaced and with margins no less than one inch."
The copies that are actually in the "record" are inferior machine copies or dim carbon copies of papers actually served; in places indistinct and illegible. The signatures are largely missing or omitted, even on the Court orders. The pages are of varying width and length and texture. The typing is anything but uniform, ofttimes single-spaced. All of which is contrary to the rules.
What we have said, however, is intended in no sense to be critical of any of the parties here, inasmuch as Rule 4.2 has never been construed as to just what constitutes the standard of compliance with the language of the Rule as to preparation of the "record" in the appendices. But our interpretation is that the Rule does not mean to lessen the dignity or mechanical preparation of the record filed here pursuant to the Rule, but only to dispense with the necessity of a formal transcript and custodial certification. The few cases construing Rule 4.2, as to requirements of the record, indicate support for our views. See Gross v. Gross, Fla.App. 1961, 131 So.2d 487; Curtis Pools, Inc. v. Fulton, Fla.App. 1959, 115 So.2d 442; Tower Credit Corp. v. State, Fla.App. 1966, 183 So.2d 255; and Bailey v. Snyder, Fla. App. 1965, 175 So.2d 574.
Overlooking the loose pleadings and proceedings below, and indulging a record here more by assumption than by authentication, we proceed to consideration of the merits.

B  The Circuit Court Proceeding.
Venue. The Courts at both levels in this case judicially know that Hon. Broward Williams is the State Treasurer and ex officio Insurance Commissioner under F.S. Chapter 324, F.S.A., and as such his official residence is in Tallahassee, Leon County, Florida. Similar notice can be taken of the official residence of Jack D. Kane, because the "Order of Suspension" recites that the Financial Responsibility Division, of which Mr. Kane is described as Acting Director, is in Tallahassee, Florida.
The Courts of the county wherein the official administrative order is made, in this instance Leon County, ordinarily have venue for judicial review of such administrative orders. Mayo v. Market Fruit Co. of Sanford, 1948, 160 Fla. 273, 34 So.2d 543; Game and Fresh Water Fish Commission v. Williams, 1946, 158 Fla. 369, 28 So.2d 431; *510 Larson v. R.K. Cooper, Inc., Fla. 1954, 75 So.2d 757, and Henderson v. Gay, Fla. 1951, 49 So.2d 325.
However, there are two exceptions, important here, to the foregoing general rule. These exceptions are (1) where there is a threatened "invasion of a constitutional right" or (2) an "attempt to seize property". In either of such events the local Circuit Court, where the constitutional right is threatened or an attempt is made to seize property, has venue, notwithstanding the agency order is made in Tallahassee by one of the executive or administrative officers of the State government. Henderson v. Gay, Fla. 1951, 49 So.2d 325; McCarty v. Lichtenberg, Fla. 1953, 67 So.2d 655; Smith v. Williams, 1948, 160 Fla. 580, 35 So.2d 844.
The facts here come within the exceptions delineated. The administrative order suspending the drivers' licenses was challenged upon grounds that are constitutional in nature, namely, that the right of due process of law was being violated because no hearing was accorded before the administrative order was entered. And there was an alleged attempt to "seize property" under the suspension order because the Ferrentinos had been summarily commanded to surrender their drivers' licenses, which licenses were privileged and therefore constituted a property right. See Tatum Bros. Real Estate & Investment Co. v. Watson, 1926, 92 Fla. 278, 109 So. 623; Ex parte Amos, 1927, 94 Fla. 1023, 114 So. 760, 763; State ex rel. Davis v. Rose, 1929, 97 Fla. 710, 122 So. 225. But cf. City of Miami Beach v. State ex rel. Patrician Hotel Co., 1941, 145 Fla. 716, 200 So. 213, 217; State ex rel. First Presbyterian Church of Miami v. Fuller, 1939, 136 Fla. 788, 187 So. 148.[1]
And so the Pinellas County Circuit Court had venue.
Jurisdiction. Venue is one thing; jurisdiction is another. They are not synonymous. Venue concerns "the privilege of being accountable to a Court in a particular location". Jurisdiction is "the power to act", the authority to adjudicate the subject matter. Bambrick v. Bambrick, Fla.App. 1964, 165 So.2d 449; In re Guardianship of Mickler, Fla. 1964, 163 So.2d 257.
Neither Broward Williams nor Jack D. Kane was ever made a formal party to the Circuit Court case. No legal process was ever served upon either of them. But they voluntarily submitted themselves as parties to the suit, and therefore the Court acquired jurisdiction over their persons. This is so because, while they presumed to challenge such jurisdiction of the Court over their persons and the subject matter in the "Motion to Dissolve", they nevertheless in addition invaded the merits of the case by contending that the administrative order was valid.
Therefore the Pinellas County Circuit Court also had jurisdiction of the persons and subject matter.

C  The Administrative Order.
Going back beyond the Court proceedings, the administrative order itself is vulnerable. As before stated, the Courts judicially know that the State Treasurer and Insurance Commissioner is Hon. Broward Williams and that, as such official, he is charged with the duty and responsibility of administering the State Insurance Code under F.S. Chapter 324, F.S.A. But the "Order of Suspension", while reciting it was entered "pursuant to Chapter 324, F.S. [F.S.A.]", is signed only by "Jack D. Kane, Acting Director". The name of Broward Williams is nowhere signed on the order nor is it even printed thereon anywhere.
This is not to say that such administrative orders could not be signed by Jack D. Kane, or any other "Acting Director", but it should affirmatively show to be the *511 act and action, of and for, the Insurance Commissioner, Broward Williams. Otherwise a serious question of validity arises. It is true that a deputy or duly designated representative of the Commissioner may perform the physical acts necessary in enforcement of the Financial Reponsibility Law, but it is still the Commissioner's acts and doings that have the vitality of legal authority, albeit through his agent. This is even shown by F.S. Section 324.042, F.S.A., a part of the Financial Responsibility Law itself:
"The commissioner, by himself or through his deputy commissioners, shall administer and enforce the provisions of this chapter, and the commissioner may make such rules and regulations as may be necessary for its administration and shall provide for hearings before a deputy commissioner or referee upon request of persons aggrieved by orders or acts of the commissioner." (Emphasis supplied).
As stated by the Supreme Court in Blackburn v. Brorein, Fla. 1954, 70 So.2d 293, text 296:
"A deputy is a person appointed to act for another and he may do anything that his principal may do. A deputy is a substitute for another and is empowered to act for him in his name and behalf in all matters in which the principal may act." (Emphasis supplied).

D  Provision for Administrative Hearing.
In appellants' "Motion to Dissolve" and in their first brief here, it was contended that the Circuit Court erroneously entered the temporary injunction of November 15, 1966 (based upon failure to provide a hearing prior to suspension of the licenses), for the reason that under Rules 5-13.01 to 5-13.04, promulgated by the Commissioner "relating to Financial Responsibility Law", an administrative hearing was expressly provided for after surrender of the license pursuant to the suspension order, and that this constituted sufficient compliance with due process under Larson v. Warren, Fla. 1961, 132 So.2d 177.
But in their reply brief appellants neatly reversed their field and contended that the Rules aforesaid did not apply to a license suspension under F.S. Section 324.121 et seq., F.S.A., where a judgment debtor fails to satisfy a Court judgment, but only applied to license suspensions under F.S. Section 324.051, F.S.A., relating to another state of facts entirely. And the argument in the reply brief proceeds to theorize that because neither the statute nor the Commissioner's Rules provide for a hearing, the licensee is simply not entitled to be heard.
As to the proper construction of the Rules in question, the Commissioner is wrong in his original brief and right in his reply brief. They are not applicable to the Ferrentinos' situation. But the Commissioner is upon shaky legal ground in contending there is no denial of due process where no hearing is provided, either before or after suspension. We do not decide the constitutional question, even if we have jurisdiction so to do,[2] because it is not necessary. Fortunately, the Supreme Court has charted a clear path in such situations.
In Keating v. State ex rel. Ausebel, Fla. 1965, 173 So.2d 673, the Supreme Court had *512 under consideration the constitutional validity of an administrative padlocking order issued under the State Beverage Law as against a landlord's claim of denial of due process, where the statute did not afford him a hearing. Mr. Justice Ervin, speaking for the Court, held that if the innocent landlord were denied a hearing absolutely, it would be a violation of constitutional due process, but that, even though the beverage law ostensibly permitted such padlocking order without providing a hearing, he was nevertheless entitled to such hearing under F.S. Sections 120.22 and 120.23, F.S.A., the Administrative Procedure Act, commenting that 
"[i]t would therefore appear that, even though § 561.58 Fla. Stat., F.S.A., does not provide for a notice and hearing as required by due process of law, this deficiency is supplied by §§ 120.22 and 120.23, Fla. Stat., F.S.A., supra, and it is therefore unnecessary to strike down § 561.58, Fla. Stat., F.S.A., for failure to do so. Section 561.58, Fla. Stat., F.S.A., and the appropriate sections of the Administrative Procedure Act when taken together meet the minimum requirements of the process of law."
Applying the rationale of Keating to the case sub judice, the Ferrentinos should have been accorded a hearing by the Commissioner before summarily having their privileged driving licenses taken away. See also In re Sackett's Estate, Fla. App. 1965, 171 So.2d 906; Trumbull Chevrolet Sales Co., Inc. v. Motor Vehicle Commissioner, Fla.App. 1961, 134 So.2d 40.

E  Judicial Review of Administrative Orders under F.S. Sec. 324.051, F.S.A.

The Commissioner contends in his original brief that the "Order of Suspension" entered under F.S. Sec. 324.051, F.S.A., could only be reviewed by F.S. Sec. 624.0128(1), F.S.A. This contention is untenable. The entire F.S. Chap. 624, F.S.A. is expressly designated as the "Florida Insurance Code" and deals exclusively with the supervision and regulation by the Commissioner of insurers and others engaged in the insurance business. And in his reply brief, the Commissioner concedes that "perhaps there is merit" in the suggestion that F.S.Sec. 624.0128(1), F.S.A. is not applicable.
In our opinion, ordinarily F.S. Sec. 120.30 et seq., F.S.A., being Part III of the Administrative Procedure Act, entitled "Judicial Review", affords the applicable mode of review. F.S. Sec. 120.31, sub-section (1), F.S.A. provides that "the final orders of an agency entered in any agency proceeding, or[3] in the exercise of any judicial or quasi-judicial authority, shall be reviewable by certiorari by the district court of appeal * * *." Sub-section (2) permits supersedeas of any agency ruling or order "in appropriate cases", which would afford adequate protection to an aggrieved person pending final judicial determination. These provisions of F.S. Chap. 120, F.S.A. are contemplated by Art. 5, Sec. 5(3), Constitution of Florida, which states that "[t]he district courts of appeal shall have such powers of direct review of administrative action as may be provided by law". (Emphasis supplied). Sauls v. De Loach, Fla.App. 1966, 182 So.2d 304.
But sub-section (4) states that "[w]hen appropriate, a party may attack an adverse order by * * * injunction, and costs shall be assessed as provided in other civil actions". (Emphasis supplied). And sub-section (1), supra, providing for review by certiorari, is immediately preceded and qualified by the words "[a]s an alternative procedure for judicial review, * * *" etc.
*513 The sum total of all this, as we see it, is that it was intended to prescribe certiorari to the District Court of Appeal as the proper mode of judicial review of an administrative order as a general rule, but that "when appropriate" the remedy of injunction could be utilized "[a]s an alternative procedure for judicial review". In this way, both sub-sections i.e., the one pertaining to certiorari and the one pertaining to injunction, may be harmonized, and in fact in our opinion is the only rational way they can be harmonized. It must be assumed, if possible, the legislature had something in mind when it provided in sub-section (4) for injunction "when appropriate" to "attack an adverse (administrative) order" and when it prefaced sub-section (1)'s provision for certiorari with the language "[a]s an alternative provision for judicial review".
If our analysis of the foregoing statutory provisions is sound, it necessarily means that, as to those instances where the remedy of injunction is invoked, the judicial review would not be to the District Courts of Appeal but to the local Circuit Courts, because the injunctive process is the peculiar function of the Circuit Courts. Art. 5, Sec. 6(3), Constitution of Florida. F.S. Sec. 64.01, F.S.A., et seq.
And such mode of review of purely administrative orders is not without respectable precedent. Hotel and Restaurant Commission v. Zucker, Fla.App. 1959, 116 So.2d 642; Florida State Board of Architecture v. Seymour, Fla. 1952, 62 So.2d 1; Bloomfield v. Mayo, Fla.App. 1960, 119 So.2d 417; De Groot v. Sheffield, Fla. 1957, 95 So.2d 912; Teston v. City of Tampa, Fla. 1962, 143 So.2d 473. This reasoning does no violence to the provisions of Art. 5, Sec. 5(3), Constitution of Florida, supra, which gives the District Courts of Appeal "such powers of direct review * * * as may be provided by law" because such statutory "powers" are not stated to be exclusive. Nor does it do violence with the provisions of Rule 4.1, Fla.Appellate Rules, which says that "[a]ll appellate review of the rulings of any commission or board shall be by certiorari", because (1) the administrative ruling here involved is not that of "any commission or board", and (2) the order was not "quasi-judicial" in character but was purely administrative or "quasi-executive" in character. See Harris v. Goff, Fla.App. 1963, 151 So.2d 642; Bloomfield v. Mayo, supra; De Groot v. Sheffield, supra.
Of course, if the Commissioner were correct in his contention that there is no administrative hearing as to a suspension order under F.S. Sec. 324.121, F.S.A., it would be of no consequence what the mode of review was. Such review would be an empty gesture because there would be actually nothing of substance to be determined by the appellate tribunal. There would be only an ex parte order entered as of course upon existence of a demonstrable fact, namely, the non-payment of a judgment, constituting the judgment debtor an uninsured motorist. But we have held that it is not a pro forma agency order; that such judgment debtor is entitled to an administrative hearing under F.S. Chap. 120, F.S.A.
This opens the door to presentation before the Commissioner of any facts or circumstances that might affect the issuance of the suspension order. Such matters, as related to the case sub judice, would include the contention that the Ferrentinos were legally covered by insurance. If they were so covered, and the insurance Company was legally obligated to pay the judgment, then the Ferrentinos should not have to suffer their driving privileges to be taken away. If they were not so covered, then they were in fact uninsured motorists and should suffer the penalties of F.S. Section 324.121, F.S.A. The provision for a hearing before the Commissioner, coupled with the right of judicial review, would give persons in the plight of the Ferrentinos abundant due process, without in any way eroding the administrative functions of the Commissioner.
*514 This is not to say that the Commissioner in the administrative hearing would determine the issue of insurance coverage, but at least the penalizing axe severing the driving privileges could be held in abeyance by the administrative processes until the legal issue is settled in the Courts. The Ferrentinos would have, as they should have, the privilege of presenting the existence of the legal issue to the Commissioner in the first instance. And the Commissioner would have full exercise of administrative discretion to insure that the legal issue was expeditiously moved along to judicial determination.

F  Disposition of Appeal.
Admittedly, it is rather anomalous procedure for a temporary injunctive order to be issued in a common-law suit. Since 1828 it has been basic law that "[n]o writ of injunction shall be granted until a bill (now complaint) shall have been filed". F.S. Sec. 64.01, F.S.A.
But our present Rules of Civil Procedure, 30 F.S.A., first promulgated in 1954, have relaxed many of the old iron-clad notions and concepts of procedure. Among these is Rule 1.39(a), as follows:
"(a) Transfers of actions. If at any time it appears that an action has been commenced either in equity or at law when it should have been brought on the opposite side of the court it shall be forthwith transferred to the proper side and proceeded with without interruption. In such case the court, without notice, may enter an order noting that the case was brought on the wrong side of the court and further ordering the clerk to docket the case on the proper side. The case shall proceed thereafter as though it were originally instituted on the proper side of the Court and no further amendments shall be necessary to change phraseology in the pleadings so far as this error is concerned. The case shall proceed as though originally instituted on the proper side of the court."
And Rule 1.8(a) provides:
"(a) Forms of Pleadings. Forms of action and technical forms for seeking relief and of pleas, pleadings or motions are abolished."
In view of the above ameliorating provisions of the Rules we will not hold the Chancellor in reversible error in entering the Orders appealed from on a "Petition" filed in the common-law action, but would suggest that, upon the going down of the mandate herein, he make such order and permit such amendments as may be necessary or advisable to conform to the foregoing Rules, as respects injunctive proceedings.
It is also suggested that the Chancellor modify his Order of November 15, 1966, so as to eliminate therefrom any reference to Rules 5-13 of the Rules and Regulations "relating to the Financial Responsibility Law" and to otherwise modify said injunctive order so as to ground the same upon the considerations hereinbefore mentioned.
Inasmuch as we have held, in spite of the tortuous difficulties encountered in trying to unravel the odd complexities of the pleadings and proceedings disclosed by the instant "record", that the lower Court had both jurisdiction and venue as to the "Petition for Injunction", that there was sufficient basis in the record for the Court to at least hold in abeyance the enforcement of the "Orders of Suspension" involved, and that the mode of review of said Orders was permissible, we affirm the interlocutory orders appealed from.
Affirmed.
SHANNON, Acting C.J., and MAXWELL, OLIVER C., Associate Judge, concur.
NOTES
[1] There is an apparent disparity of judicial opinion as to whether a driver's license in this State is a property right. We believe it is, but the point is academic, inasmuch as the constitutional claim exists.
[2] Article V, Sec. 4(2) Constitution of Florida, F.S.A., provides that "Appeals from trial Courts may be taken directly to the supreme court, as a matter of right, * * * from final judgments or decrees directly passing upon the validity of the state statute * * * or construing a controlling provision of the Florida * * * constitution * * *. Appeals from district courts of appeal may be taken to the supreme court, as a matter of right, * * * from decisions initially passing upon the validity of a state statute or initially construing a controlling provision of the Florida * * * constitution". (Emphasis supplied). No constitutional question was tendered or presented in the Circuit Court. In this Court, while the question was raised initially, it was presented only by sheer inference.
[3] The use of the alternative "or" definitely indicates that the judicial review provisions of F.S. Sec. 120.30 et seq., F.S.A. contemplate both quasi-judicial orders and quasi-executive orders, such as the instant suspension order. See infra.